OPINION
On October 27, 1998, at approximately 12:48 a.m., Officer Gregory Smith of the Village of McComb Police Department observed Defendant/Appellant, Douglas Andrews, operating a motor vehicle southbound on "186" and within the Village limits. The southbound and northbound lanes of "186" are delineated within the Village by double solid yellow lines indicating no passing permitted.
Officer Smith testified that when he first observed Appellant's vehicle, he noticed that the right rear tire was left of the centerline by one tire width and the tire remained left of center for a distance of at least two feet. Officer Smith testified that he was unsure where the vehicle was coming from and that the tire may have been left of center as a result of the driver simply cutting a turn/corner short. Officer Smith continued to observe Appellant's vehicle and noticed that as the vehicle approached and traversed a steep railroad crossing both left side tires traveled left of the centerline by a complete tire width and the tires remained left of center for approximately three feet.[1]
As a result of Officer Smith's observations, a traffic stop was initiated and perfected. Subsequently, Appellant was cited for driving under the influence of alcohol, a violation of R.C. § 4511.19. Thereafter Appellant filed a Motion To Suppress on the grounds that Officer Smith lacked reasonable articulable suspicion to make the stop of Appellant's vehicle. On June 9, 1999, a suppression hearing was held. At the hearing, the trial court, in overruling the Motion To Suppress, concluded as follows:
 All right, the court would find from the evidence that the Defendant was left of center just prior to passing the railroad tracks, and again just after South Street. Both incidents were very, very brief; the officer even stating that he wanted to confirm the first incident with further driver action. The Court will disregard any testimony regarding any action outside of the city limits, because in order for the stop to be valid, the observation had to take place within the jurisdiction of the officer. * * *
* * *
 That brings us back, then, to the issue of the left of centers. Although the first left of center, according to the officer's testimony, was not sufficient in his mind to justify a stop, it did contribute to his suspicion. The second left of center confirmed that suspicion that there was some improper driver action. * * *
* * *
 Based on what I've heard here today, it's about as when it comes to finding the totality of the circumstances to be reasonable, articulable suspicion it's probably just about as thin as I'm willing to go. * * *
 The Court feels that this may be a good case to find out in the Third District whether or not this is enough for reasonable, articulable suspicion. But based on what I've heard at this point, I'm going to overrule the Motion to Suppress, and set this matter for further proceedings.
(Transcript, pages 45, 46, 48, 49). Thereafter Appellant entered a plea of no contest to the driving under the influence charge and the trial court found him guilty of the offense charged. Appellant was sentenced to forty days in jail with twenty suspended, was fined and given a two year operator's license suspension reviewable after one year.
It is from the decision of the trial court overruling the Motion To Suppress that Appellant now appeals, prosecuting one assignment of error.
 Assignment of Error
The trial court erred in denying the Defendant-Appellant's Motion To Suppress because the arresting officer lacked a reasonable articulable suspicion to stop and detain the Defendant/Appellant.
We begin our review of the motion to suppress ruling by noting the applicable standards of review for this Court.
Review of a motion to suppress ruling involves a mixed question of law and fact. United States v. McConney (C.A.9, 1984),728 F.2d 1195, certiorari denied (1984), 469 U.S. 824, 105 S.Ct. 101,83 L.Ed.2d 46; United States v. Martinez (C.A.11, 1992),949 F.2d 1117, 1119; United States v. Mejia (C.A.9, 1991), 953 F.2d 461,464-465; United States v. Wilson (C.A.11, 1990), 894 F.2d 1245,1254. In a motion to suppress, the trial court assumes the role of the trier of facts, and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. See, e.g., State v. Mills (1992), 62 Ohio St.3d 357, 366,582 N.E.2d 972, 981, certiorari denied (1992), 505 U.S. 1227,112 S.Ct. 3048, 120 L.Ed.2d 915, citing State v. Fanning (1982),1 Ohio St.3d 19, 20, 437 N.E.2d 583, 584; State v. Clay (1972),34 Ohio St.2d 250. State v. Payne (1995), 104 Ohio App.3d 364, 367,662 N.E.2d 60, 61-62; State v. Robinson (1994), 98 Ohio App.3d 560,570, 649 N.E.2d 18, 25; State v. Rossiter (1993), 88 Ohio App.3d 162,166, 623 N.E.2d 645, 648. The weight of the evidence is also primarily for the trier of the facts. State v. DeHass
(1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; State v. Smith (1997), 80 Ohio St.3d 89, 105,684 N.E.2d 668, 685; State v. Brooks (1996), 75 Ohio St.3d 148, 154,661 N.E.2d 1030, 1036-1037; Fanning, 1 Ohio St.3d 19, 20,437 N.E.2d 583, 584-585.
Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Brooks, 75 Ohio St.3d at 154, 661 N.E.2d 1030;State v. Williams (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141,1143; United States v. Lewis (C.A.1, 1994), 40 F.3d 1325, 1332;State v. Harris (1994), 98 Ohio App.3d 543, 546, 649 N.E.2d 7, 9;State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906,908. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Id; Ornelas v. United States (1996), 517 U.S. 690,116 S.Ct. 1657, 134 L.Ed.2d 911; State v. Anderson (1995), 100 Ohio App.3d 688,691, 654 N.E.2d 1034. That is, the application of the law to the trial court's findings of fact is subject to a de novo
standard of review. Harris, supra, 98 Ohio App.3d at 546,649 N.E.2d at 9; Anderson, 100 Ohio App.3d at 691, 654 N.E.2d at 1036; see, also, Lewis, supra, 40 F.3d at 1332; Wilson, supra,894 F.2d at 1254.
When a police officer stops a motor vehicle and detains its occupants, he has "seized" it and its occupants within the meaning of the Fourth Amendment to the United States Constitution. See,Terry v. Ohio (1968), 392 U.S. 1, 8, 9, 88 S.Ct. 1868, 1872,1873, 20 L.Ed.2d 889; Berkemer v. McCarty (1984), 468 U.S. 420,104 S.Ct. 3138, 3149, 82 L.Ed.2d 317; United States v. Mendenhall
(1980), 446 U.S. 544, 556-557, 100 S.Ct. 1870, 1878,64 L.Ed.2d 497 (opinion of Stewart J.); Delaware v. Prouse (1979),440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660. The Fourth Amendment provides:
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
The ultimate standard set forth in the Fourth Amendment is reasonableness.
The law governing investigative stops of automobiles is clear. The Fourth and Fourteenth Amendments to the United States Constitution as well as Section 14, Article I of the Ohio Constitution prohibit any governmental search or seizure, including a brief investigative stop, unless supported by an objective justification. Terry, 392 U.S. 1, 20-21, 88 S.Ct. 1868,20 L.Ed.2d 889; State v. Andrews (1991), 57 Ohio St.3d 86, 87,565 N.E.2d 1271. Before stopping a vehicle, a law enforcement officer must have reasonable suspicion, based on specific and articulable facts that an occupant is or has been engaged in criminal activity. See Terry, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889;Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660; State v.Ball (1991), 72 Ohio App.3d 43, 46, 593 N.E.2d 431, citing Adamsv. Williams (1972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612, and Terry, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Thus, if the specific and articulable facts indicate to the officer that the driver of an automobile may be committing a criminal act, which includes a violation of a traffic law, the officer can justifiably make an investigative stop. State v. Carlson (1995), 102 Ohio App.3d 585,593, 657 N.E.2d 591; State v. Cole (Sept. 13, 1995), Wyandot App. No. 16-94-11, unreported at 4. In a situation where the officer has observed a traffic violation, the stop is constitutionally valid. City of Dayton v. Erickson (1996),76 Ohio St.3d 3, 9, 665 N.E.2d 1091; State v. Evans (1993),67 Ohio St.3d 405, 618 N.E.2d 162, certiorari denied (1993),510 U.S. 1166, 114 S.Ct. 1195, 127 L.Ed.2d 544. With these principles in mind, we turn to the issue raised by the parties in their briefs.
Our inquiry in the case sub judice therefore begins and ends with a consideration of whether Officer Smith had reasonable suspicion, based on specific and articulable facts that an occupant in Appellant's vehicle may be committing a criminal act, including but not limited to a violation of a traffic law.
When one or more left side tires on a vehicle approaching a railroad crossing are traveling to the left of the centerline bisecting a two lane roadway delineated by marked lanes, without apparent justification, at least three sections of the Ohio Revised Code and the corresponding sections of the Village of McComb City Ordinances are ostensibly implicated.
R.C. § 4511.25 ("Lanes of travel upon roadways") provides:
 (A) Upon all roadways of sufficient width, a vehicle or trackless trolley shall be driven upon the right half of the roadway, except as follows:
 (1) When overtaking or passing another vehicle proceeding in the same direction, or when making a left turn under the rules governing such movements;
 (2) When an obstruction exists making it necessary to drive to the left of the center of the highway; * * *
 (5) When otherwise directed by a police officer or other traffic control device.
* * *
Section 72.03 of the Village of McComb Municipal Ordinances is analogous to this section of the Revised Code.
R.C. § 4511.29 ("Driving to left of center line") provides:
 No vehicle or trackless trolley shall be driven to the left of the center of the roadway in overtaking and passing traffic proceeding in the same direction, unless such left side is clearly visible and is free of oncoming traffic for sufficient distance ahead to permit such overtaking and passing to be completely made, without interfering with the safe operation of any traffic approaching from the opposite direction or any traffic overtaken. * * *
Section 72.06 of the Village of McComb Municipal Ordinances is analogous to this section of the Revised Code.
R.C. § 4511.30 ("Prohibition against driving upon left side of roadway") provides:
 No vehicle or trackless trolley shall be driven upon the left side of the roadway under the following conditions:
 (A) When approaching the crest of a grade or upon a curve in the highway, where the operator's view is obstructed within such a distance as to create a hazard in the event traffic might approach from the opposite direction;
 (B) When the view is obstructed upon approaching within one hundred feet of any bridge, viaduct, or tunnel;
 (C) When approaching within one hundred feet of or traversing any intersection or railroad grade crossing.
 This section does not apply to vehicles or trackless trolleys upon a one-way roadway, upon a roadway where traffic is lawfully directed to be driven to the left side, or under the conditions described in division (A)(2) of section 4511.25 of the Revised Code.
Section 72.07 of the Village of McComb Municipal Ordinances is analogous to this section of the Revised Code.
In the present case, following a through review of the record herein, we hold that the trial court's conclusion that while within the municipal limits of the Village of McComb Appellant's vehicle moved left of the centerline on two occasions is supported by competent, credible evidence. Furthermore, Officer Smith clearly had a reasonable suspicion, based on specific and articulable facts that an occupant in Appellant's vehicle was or had been engaging in criminal activity. That is, Officer Smith could have reasonably suspected that the driver of the automobile had moved left of the double yellow centerline though not attempting to pass a vehicle traveling in the same direction, making a left turn, or avoiding an obstruction in the road. See, R.C. §§ 4511.25 4511.29 Village of McComb Codified Ordinances §§ 72.03 72.06. Officer Smith could have reasonably suspected that the driver of the automobile moved left of the double yellow centerline although the vehicle was within one hundred feet or traversing a railroad crossing. See, R.C. § 4511.30 Village of McComb Codified Ordinances § 72.07. Consequently, the officer was constitutionally permitted to make a brief stop of Appellant's vehicle in order to investigate the possible infractions.
The Fourth Amendment to the United States Constitution, and Section 14, Article I of the Ohio Constitution, prohibitunreasonable searches and seizures. We find no constitutional violation here because the stop of Appellant's vehicle was supported by objective specific and articulable facts indicating that the driver of the automobile may be committing a violation of a traffic law. Accordingly, the decision of the trial court overruling Appellant's Motion to Suppress is affirmed.
We note that Appellant relies on a line of cases holding that a "de minimis violation of marked lanes without other evidence of impairment does not justify an investigative stop." See, State v.Gullet (1992), 78 Ohio App.3d 138, State v. Williams (1993),86 Ohio App.3d 37, State v. Drogi (1994), 96 Ohio App.3d 466, Statev. Glascock (1996), 111 Ohio App.3d 371, and State v. Brite
(1997), 120 Ohio App.3d 517. (Appellant's brief, page 5-7). It follows, according to Appellant, that the lane violations observed by Officer Smith were "de minimis" and therefore insufficient to justify the stop of the vehicle. Appellant invites this Court to adopt the reasoning established by the "de minimis" line of cases and apply that reasoning to the present facts.
While we recognize the existence of those cases holding essentially that a de minimis violation does not necessarily give a police officer reasonable suspicion to stop a vehicle, see, Id., we disagree with the general reasoning of those cases and note that such cases have effectively been overruled by the United States Supreme Court in Whren v. United States (1996),517 U.S. 806, 116 S.Ct. 1769, 135 L.E.2d 89, and the Ohio Supreme Court inDayton v. Erickson (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091.Whren and Erickson established the rule that a stop by a police officer based upon probable cause that a traffic violation has occurred, or was occurring, is reasonable per se. The reasoning in Whren and Erickson is applicable to Terry stops, notwithstanding the fact that the cases dealt with probable cause. Without exception readily apparent, every Appellate Court in Ohio presented with the opportunity, including this Court, has applied the Whren and Erickson rationale to Terry stops. Further, thatWhren and Erickson are "pretextual" cases is similarly a distinction without significance to the present case.
Consistent with Whren and Erickson, we hold that where a police officer stops a vehicle based on reasonable articulable suspicion or probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution. That is, when a police officer observes criminal activity taking place, including a violation of the traffic laws, they are automatically justified in effecting aTerry stop and pulling over the motor vehicle involved. That is not to say, by way of example, that every crossing of a highway edge or centerline makes a traffic stop constitutionally permissible. A driver crossing the centerline to avoid an apparent obstruction in the highway or crossing the centerline to properly pass a vehicle traveling in the same direction would not be instances where a traffic stop would be constitutionally permissible. But, where a driver, while approaching and/or traversing a railroad crossing, crosses the center line on one or more occasions and does so for no apparent reason, we think it reasonable for an officer observing such action to initiate a traffic stop in an effort to at least investigate possible violations. That the driver may have a reasonable explanation for traveling left of center might serve to alleviate the suspicion or be a defense to a charge, however, such explanation has no bearing on the propriety of the initial contact and obviously can not be obtained until an investigative stop is made.
Finally, we pause to comment that by advancing the de minimis violation argument, Appellant apparently concedes that his actions violated one or more provisions of the Revised Code or Codified Ordinances of the Village of McComb. In fact, Appellant states in his brief that "it is clear that the actions of the Defendant/Appellant in this matter constituted nothing more than a de minimis lane violation." By definition, a de minimis violation is in fact a violation. It seems that Appellant's argument is based on the assertion that although his actions violated one or more traffic laws, those same actions were not severe enough or sufficiently egregious so as to justify a police officer in stopping the vehicle. We are aware of no principle in criminal jurisprudence that prohibits a police officer who observes an apparent traffic violation from initiating a Terry stop simply because the violation observed was "de minimis." To conclude otherwise would be to confuse the reasonable articulable suspicion or probable cause standards with the ultimate standard of proof beyond a reasonable doubt.
In accordance with the holdings of the Supreme Court of the United States and this state, we conclude that the trial court was correct in overruling Andrews' Motion to Suppress. Appellant's sole assignment of error is therefore overruled.
Judgment affirmed.
 BRYANT, J.
 HADLEY, P.J., and SHAW, J., concur.
[1] Officer Smith testified that he observed the vehicle again move left of center after the vehicle exited the municipal limits of the Village of McComb. Therefore, any reasonable articulable suspicion or probable cause for stopping the vehicle cannot be based on this last incident.