DECISION AND JUDGMENT ENTRY
This is an appeal from a Hocking County Municipal Court judgment of conviction and sentence. The jury found David M. Seymour, defendant below and appellant herein, guilty of driving a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1), and of failure to control a motor vehicle in violation of R.C. 4511.202. The following errors are assigned for our review:
FIRST ASSIGNMENT OF ERROR:
 "DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR WHEN IT DENIED DEFENDANT'S MOTION TO SUPPRESS?"
SECOND ASSIGNMENT OF ERROR:
 "DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR WHEN IT SUA SPONTE RULED DEFENDANT'S WIFE, IF SHE TESTIFIED, COULD BE CROSS-EXAMINED ABOUT HER KNOWLEDGE OF DEFENDANT'S PAST OMVI CONVICTION CHARGES, INCIDENTS AND HIS DRINKING ON OTHER OCCASIONS?"
THIRD ASSIGNMENT OF ERROR:
 "DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR BY IMPROPERLY INTERJECTING ITSELF INTO THE TRIAL PROCEEDINGS?"
Our review of the record reveals the following facts pertinent to this appeal. On the evening of October 19, 2000, Fred Carpenter and his wife were watching television in their home adjacent to State Route 664, near South Bloomingville, when they heard a loud noise in the front yard. Carpenter rushed to the front door and observed a Ford truck that had left the highway and crashed through several trees and a fence. He called 911 to report the accident and then walked to the scene to see if the driver had been injured. Carpenter approached the vehicle and recognized appellant as the driver.[1]
Although initially unconscious and slumped over the steering wheel, appellant eventually regained consciousness and asked Carpenter to drive him home. Carpenter refused and advised appellant to sit still until the ambulance arrived. Shortly thereafter, Richard Huffman appeared at the scene.[2] Appellant then asked Huffman to drive him home. Huffman agreed, and appellant and Huffman left the scene before law enforcement officers or other rescue personnel arrived.
Apparently, the closest law enforcement official to the accident scene was Paul Baker, a Park Officer at the Hocking Hills State Park. The Hocking County Sheriff radioed Officer Baker and asked him to investigate. Officer Baker arrived at the scene and observed a truck leaving the area. Carpenter then informed Baker that the suspect had left the scene in the truck. Officer Baker relayed the information to the Hocking County Sheriff's Department which, in turn, requested that he pursue to detain the two men for leaving the scene of the accident. Officer Baker soon located the Huffman vehicle, turned on his pursuit lights and detained Huffman and appellant for eight or nine minutes until Sheriff's Deputy Eric Matheny and State Patrol Trooper Jason Allison arrived.
Officer Matheny and Trooper Allison transported appellant to the accident scene where they began an investigation and had emergency vehicle personnel evaluate appellant. During that time, both officers noted appellant's odor of alcohol, slurred speech and his "robotic" like gait. The officers concluded that appellant was under the influence. Trooper Allison then arrested appellant and transported him to a "park station." Appellant subsequently refused to perform various physical coordination tests or to provide a urine sample. Appellant was eventually charged with operating a motor vehicle under the influence and with failing to control his motor vehicle.
On December 7, 2000, appellant filed a three-part motion to suppress evidence. Appellant argued that Officer Baker (1) acted outside his territorial jurisdiction by detaining Huffman's vehicle, and; (2) did not have probable cause to make an arrest. The matter came on for hearing on December 13, 2000, at which time Officer Baker testified that he stopped the vehicle at the Hocking County Sheriff's Department's request because appellant had left the scene of an accident. On January 3, 2001, the trial court denied appellant's motion.
At trial, Officers Baker, Matheny and Allison recounted the events and all opined that appellant was under the influence of alcohol. Appellant testified in his own defense and explained that he lost control of his vehicle when he tried to avoid hitting a dog that had run into the road. He admitted having had a drink that day, but denied that he was under the influence. Several of appellant's employees and acquaintances corroborated this account. They testified that they had either not seen appellant drink at all, or that he did not appear to be under the influence.
The jury found appellant guilty of driving while under the influence and the trial court found him guilty of failure to control a motor vehicle. The court ordered that appellant serve a partially suspended jail sentence, pay a mandatory fine, receive a five year suspension of driving privileges, and serve three years of probation. This appeal followed.
 I
In his first assignment of error, appellant asserts that the trial court erred by overruling his motion to suppress evidence. We disagree with appellant.
Appellate review of trial court rulings on requests to suppress evidence present mixed questions of law and fact. See State v. McNamara
(1997), 124 Ohio App.3d 706, 710, 707 N.E.2d 539, 541; State v. Brite
(1997), 120 Ohio App.3d 517, 519; 698 N.E.2d 478, 479; also see UnitedStates v. Martinez (C.A. 11 1992), 949 F.2d 1117, 1119; United States v.Wilson (C.A.11 1990), 894 F.2d 1245, 1254. During proceedings on motions to suppress, a trial court assumes the role of trier of fact. State v.Payne (1995), 104 Ohio App.3d 364, 367, 662 N.E.2d 60, 61-62; State v.Robinson (1994), 98 Ohio App.3d 560, 570, 649 N.E.2d 18, 25; State v.Rossiter (1993), 88 Ohio App.3d 162, 166, 623 N.E.2d 645, 648. Thus, the evaluation of evidence and credibility of witnesses are issues to be determined by the trial court. State v. Smith (1997), 80 Ohio St.3d 89,105, 684 N.E.2d 668, 685; State v. Brooks (1996), 75 Ohio St.3d 148,154, 661 N.E.2d 1030, 1036-1037; State v. Fanning (1982), 1 Ohio St.3d 19,20, 437 N.E.2d 583, 584-585. Factual findings should be accepted unless those findings are "clearly erroneous." State v. Long (1998),127 Ohio App.3d 328, 332, 713 N.E.2d 1, 3; State v. Kennedy (Sep. 30, 1999), Ross App. No. 99CA2472, unreported; State v. Babcock (Feb. 13, 1997), Washington App. No. 95CA40, unreported; also see United States v.Lewis (C.A.1 1994), 40 F.3d 1325, 1332. In other words, a reviewing court is bound to accept a trial court's factual determinations when those findings are supported by competent, credible evidence. State v. Harris
(1994), 98 Ohio App.3d 543, 546, 649 N.E.2d 7, 9; State v. Claytor
(1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908; also see State v.DePalma (Jan. 18, 1991), Ross App. No. 1633, unreported. The application of the law to those facts is then subject to de novo review by a reviewing court. Harris, supra at 546, 649 N.E.2d at 9; State v.Anderson (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034, 1036; alsosee Lewis, supra 1332; Wilson, supra at 1254. With this in mind, we turn our attention to the particular facts and circumstances of the case subjudice.
Initially, we note that the trial court's judgment does not state precisely why it denied appellant's motion. From our review of the record, however, we agree with that disposition.[3] Our analysis begins with the Fourth Amendment to the United States Constitution which guarantees the rights of people to be secure against unreasonable searches and seizures. This protection is made applicable to the states through the Fourteenth Amendment Due Process Clause, see generally Mappv. Ohio (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. Similar safeguards are further provided under Section 14, Article I of the Ohio Constitution. See State ex rel. Wright v. Ohio Adult Parole Auth. (1996), 75 Ohio St.3d 82, 88, 661 N.E.2d 728, 733; State v. Andrews
(1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, 1273. These protections ensure that searches and seizures, conducted outside the judicial process without prior approval by judge or magistrate, are per se unreasonable, subject only to specifically established and well-delineated exceptions.See Thompson v. Louisiana (1984), 469 U.S. 17, 19-20, 93 L.Ed.2d 246,250, 105 S.Ct. 409, 410; Katz v. United States (1967), 389 U.S. 347,357, 19 L.Ed.2d 576, 585, 88 S.Ct. 507, 514; also see State v. Veit (May 26, 1998), Athens 97CA34, unreported
One exception to the warrant requirement is the "Terry type" stop. This exception permits a stop and a brief detention when police can point to specific and articulable facts which, taken together with rational inferences therefrom, give rise to a reasonable suspicion of criminal activity. Terry v. Ohio (1967), 392 U.S. 1, 21, 20 L.Ed.2d 889, 906,88 S.Ct. 1868, 1880; also see Andrews, supra at 87, 565 N.E.2d 1271, 1273, at fn. 1; State v. Loza (1994), 71 Ohio St.3d 61, 71, 641 N.E.2d 1082. This is what happened when Officer Baker stopped Huffman's car in order to detain appellant.
It is undisputed that appellant was involved in a property damage accident. Under R.C. 4549.03, appellant was required to provide his name, address and vehicle registration number. When appellant left the accident scene without complying with the statute, Officer Baker had sufficient justification to stop Huffman's vehicle and to detain appellant until Deputy Matheny and Trooper Allison arrived on the scene.[4] See R.C. 4549.99(B).
Appellant argues that he could not be stopped for a R.C. 4549.03
violation because he and Carpenter had "prior knowledge" of each other's identities and that this "satisfied the statute." We disagree. Even though the two men knew each other, we find no evidence in the record to indicate that Carpenter knew appellant's address or other pertinent information.
Appellant also asserts that even if the officer had a sufficient basis for a stop and detention, a constitutional violation occurred when the officer transported appellant to the accident scene. Again, we are not persuaded.
First, we note that it appears that appellant did not raise this particular argument in his motion to suppress evidence. We will not consider issues raised for the first time on appeal. See State v.Cremeans (Jun. 26, 2000), Lawrence App. No. 99CA12, unreported; State v.Kerns (Mar. 21, 2000), Washington App. No. 99CA30, unreported; State v.Remy (Jun. 27, 1997), Ross App. No. 96CA2245, unreported. Second, even if the issue was properly before us, we note that the purpose of a Terry
type stop is to maintain the status quo while police investigate the circumstances surrounding the stop. See Adams v. Williams (1972),407 U.S. 143, 146, 32 L.Ed.2d 612, 617, 92 S.Ct. 1921, 1923; State v.Bobo (1988), 37 Ohio St.3d 177, 180, 524 N.E.2d 489, 492. Obviously, the best place to investigate appellant's accident was the accident scene. This is particularly true in light of the fact that appellant admitted his involvement. Many courts have concluded that a suspect's movement for a legitimate law enforcement purpose does not automatically convert or elevate an investigative detention into an arrest. See 4 LaFave, Search 
Seizure (1996), 78-79, Section 9.2(g), citing Commonwealth v. Barros
(1997), 425 Mass. 572, 682 N.E.2d 849 (proper to take suspects three blocks for viewing by witnesses); People v. Foster (1995), 85 N.Y.2d 1012,654 N.E.2d 1216 (seizure and transporting suspect "to a clothing store one block away" for identification found to be proper); United States v.Vanichromanee (C.A.7, 1984) 742 F.2d 340 (transfer from parking garage to apartment reasonable, further noting that the transfer was not to a more "institutional setting"); State v. Mitchell (1987), 204 Conn. 187,525 A.2d 1168 (proper to transport suspect to hospital for viewing by victim); Buckingham v. State (1984), 482 A.2d 327 (return of suspect to crime scene for identification proposes was proper when it did not "unduly prolong the detention"); People v. Lippert (1982), 89 Ill.2d 171,432 N.E.2d 605 (two to three mile transportation of suspect for identification showup is a legitimate investigatory procedure); State v.Bell (1981), 395 So.2d 805 (proper to take suspects from restaurant to nearby burglary scene); United States v. Medina (C.A.6, 1993), 992 F.2d 573
(authorities apprehended a fleeing suspect and returned him to crime scene).
In the case sub judice, we thus conclude that appellant's movement from the initial location of his investigative detention to the accident scene did not convert the detention into an arrest. We believe that the officer possessed a valid and legitimate law enforcement purpose for transporting appellant to the accident scene. The accident investigation, which involved appellant's vehicle and appellant as the vehicle's driver, provided ample justification for appellant's movement. Appellant's movement resulted from a legitimate law enforcement purpose. Thus, we find nothing constitutionally infirm in Officer Baker taking appellant to the accident scene.
We also find no impropriety in appellant's arrest for driving while under the influence of alcohol. Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in the belief that an offense has been committed. See Draper v. United States (1959),358 U.S. 307, 313, 3 L.Ed.2d 327, 332, 79 S.Ct. 329, 333; also see Statev. Timson (1974), 38 Ohio St.2d 122, 311 N.E.2d 16, at paragraph one of the syllabus; State v. Fultz (1968), 13 Ohio St.2d 79, 234 N.E.2d 593, at paragraph one of the syllabus. To determine whether a police officer had probable cause to arrest an individual for violating R.C. 4511.19, courts employ a totality of the circumstances approach. See Atwell v. State
(1973), 35 Ohio App.2d 221, 226-227, 301 N.E.2d 709, 713; also see Statev. Earich (Mar. 29, 2001), Columbiana App. No. 00CO21, unreported; Statev. Chelikowsky (Aug. 18, 1992), Pickaway App. No. 91CA27, unreported. That said, we find that the facts and circumstances present in the casesub judice amply support a finding of probable cause to arrest.
Trooper Allison testified at the suppression hearing that when he encountered appellant he was "overwhelmed with an odor of an alcohol . . ." Allison further related that appellant's eyes were "glassed over" and bloodshot, and that he had a "slow talk" and "robotic" motions. Appellant also admitted that he was the driver of the vehicle involved in the accident. From the physical appearance of the accident scene, Allison surmised that appellant simply "missed the curve" while driving. We believe that these facts and circumstances provided a sufficient basis for probable cause to arrest appellant for driving while under the influence of alcohol.
Accordingly, for these reasons, we find no error in the trial court's decision to overrule the motion to suppress. We therefore overrule appellant's first assignment of error.
 II
Appellant's second assignment of error involves a colloquy that occurred during a bench conference at trial. At one point, the defense called appellant's wife to testify as a defense witness. The State objected and the following exchange occurred:
 "[THE STATE] Before we go any further under State vs. Adams, she has to be apprised [sic] on the record that she is incompetent to testify in a case where her husband is the defendant unless she specifically elects after being advised. If you don't advise her, it's a mistrial.
 THE COURT: Yeah, and both of you come here for a second. You know, you're opening the door here, because you're putting her on to say what he looks like and he's going to be able to say, okay, what's he look like when's [sic] drunk, what's his normal behavior, da-da-da-da-da. You're just opening the door wide open. So I'm going to give it him if that's what you want.
 [THE DEFENSE] As long as he doesn't misstate. He has to have an occasion. He can't ask about other charges.
 THE COURT: Well, there's no husband and wife privilege now. It's wide open.
 [THE DEFENSE] It has nothing to do with privilege. Its' bringing in other offenses.
 THE COURT: Well, no. No, you're waiving the privilege I think. He can get into any of that stuff about what's he act like or what's he look like when he's drunk or how much does it take to get him drunk, etc.
 [THE DEFENSE] All right. Based upon that objection by the State, I will not ask any more questions."
Appellant argues that the trial court erred by ruling that his wife could be questioned about his prior drunk driving convictions and that such evidence was excluded under Evid.R. 404(B).[5] We disagree with appellant.
Our review reveals that the trial court's ruling was more in the nature of an in limine decision. In other words, the court gave advance warning or made a preliminary ruling concerning evidentiary issues that might arise during appellant's wife's testimony. Generally, appellate courts do not directly review in limine rulings. See State v. White (Oct. 21, 1996), Gallia App. No. 95CA08, unreported. Those rulings are tentative and interlocutory and made by a court only in anticipation of its actual
ruling on evidentiary issues at trial. See McCabe/Marra Co. v. Dover
(1995), 100 Ohio App.3d 139, 160, 625 N.E.2d 236, 250; Collins v. StorerCommunications, Inc. (1989), 65 Ohio App.3d 443, 446, 584 N.E.2d 766,767-768. The grant or denial of a motion in limine does not preserve any error for review. See State v. Hill (1996), 75 Ohio St.3d 195, 202-203,661 N.E.2d 1068, 1077. In order to preserve the error, the evidence must be presented at trial, and a proper objection lodged. See State v. Brown
(1988), 38 Ohio St.3d 305, 528 N.E.2d 523, at paragraph three of the syllabus; State v. Grubb (1986), 28 Ohio St.3d 199, 503 N.E.2d 142, at paragraph two of the syllabus. An appellate court will then review the correctness of the trial court's ruling on the objection rather than the ruling on the in limine. See White, supra; Wray v. Herrell (Feb. 24, 1994), Lawrence App. No. 93CA08, unreported.
In the instant case, the prosecution did not actually question appellant's spouse as to her husband's prior drunk driving convictions. Thus, appellant did not have the opportunity to object to that particular line of questioning. Because the questions were never asked, we have no actual evidentiary ruling to review on appeal.
Accordingly, based upon the foregoing we overrule appellant's second assignment of error.
 III
In his third assignment of error, appellant asserts that the trial court judge erred by "interjecting itself into the trial proceedings." We disagree with appellant. Generally speaking, judges have broad discretion in the manner by which they control the courtroom proceedings and those decisions will not be reversed absent an abuse of that discretion. SeeState v. Williams (May 18, 1998), Highland App. No. 97CA928, unreported;State v. Hatfield (Mar. 18, 1996), Ross App. No. 95CA2112, unreported;State v. Roach (Sep. 27, 1995), Gallia App. No. 94CA22, unreported; Statev. Matheny (Mar. 2, 1994), Hocking App. No. 92CA19, unreported. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Statev. Clark (1994), 71 Ohio St.3d 466, 470, 644 N.E.2d 331, 335; State v.Moreland (1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894, 898; State v.Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144, 149. An abuse of discretion means that the result is so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but, rather, passion or bias. Nakoffv. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1, 3. Reviewing courts should not substitute their judgment for the trial court's judgment when determining how best to carry out the trial court's discretionary duties. See In re Jane Doe I (1991), 57 Ohio St.3d 135,137-138, 566 N.E.2d 1181, 1184; Berk v. Matthews (1990), 53 Ohio St.3d 161,169, 559 N.E.2d 1301, 1308.
After carefully reviewing the entire transcript, paying particular attention to those instances appellant cites in his brief as examples of the trial court "interject[ing] itself" into the proceedings, we find nothing arbitrary, unconscionable or unreasonable. Indeed, we conclude that in some instances the trial court showed admirable restraint.
Accordingly, we find no merit in appellant's assignment of error and it is accordingly overruled.
 JUDGMENT AFFIRMED. JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Evans, J.: Concurs in Judgment Opinion.
[1] Appellant is a local business owner, as well as a Benton Township Trustee, and is known by Carpenter.
[2] Huffman is a volunteer with the Laurelville Fire Department. He heard about the accident on his home radio and, because he lived nearby, decided to investigate the accident himself.
[3] It is axiomatic that reviewing courts review the correctness of judgments, not the reasons behind those judgments. Lisath v. Cochran
(Jan. 12, 1994), Lawrence App. No. 93CA18, unreported (Stephenson, J. Concurring in Part Dissenting in Part) also see 5 Ohio Jurisprudence 3d (1999) 160, Appellate Review, § 437.
[4] We note that appellant no longer challenges Officer Baker's authority to stop and to detain him outside the boundaries of Hocking Hills State Park. Thus, we do not address this issue.
[5] The provisions of Evid.R. 404(B) provide, inter alia, that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."