The STATE of Ohio, Appellee,

v.

HARRIS, Appellant.

[Cite as *State v. Harris* (1994), 98 Ohio App.3d 543.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 66984.

Decided Nov. 14, 1994.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Paul J. Daley,* Assistant Prosecuting Attorney, for appellee.

*James A. Draper,* Cuyahoga County Public Defender, and *Robert R. Clarico,* Assistant Public Defender, for appellant.

---

*Per Curiam.*

Defendant-appellant, William Harris, appeals the judgment of conviction for drug abuse in violation of R.C. 2925.11.

Appellant raises the following sole assignment of error for our review:

"The trial court erred in denying Mr. Harris' motion to suppress when the evidence seized was the fruit of an illegal search and seizure in violation of Article I, Section 14 of the Ohio Constitution and the Fourth and Fourteenth Amendments of the United States Constitution."

At the hearing on appellant's motion to suppress evidence, Patrolman Darrell Garner, a Regional Transit Authority ("RTA") police officer with eighteen years' experience in law enforcement, was called upon to testify first on behalf of the state. Officer Garner testified that on September 22, 1993, at approximately 3:30 a.m. to 4:00 a.m., he and his partner, Officer Vincent Ventura, were patrolling the East 55th Street rapid transit station when they noticed a pickup truck with plastic liners covering its shattered windows. Officer Garner stated that they had patrolled the same area an hour earlier and had not observed the truck.

Considering the shattered windows and unkempt condition of the vehicle, Officer Garner suspected it to be either stolen or abandoned and decided to investigate further. Additionally, Officer Garner stated that RTA parking lots are not open to the public this late at night when the trains were not running. As Officers Garner and Ventura approached the vehicle on foot, Officer Garner observed someone stir in the front seat. Officer Garner woke up the person, later identified as appellant, and requested him to step out of the vehicle.

As appellant exited the vehicle, Officer Ventura illuminated the inside of the truck, and both officers observed some pills on a tray on top of the glove compartment. Officer Ventura then illuminated the inside of an open glove compartment and observed a clear plastic tube, commonly known as a "straight shooter."

After discovery of the pills on the dashboard and the straight shooter inside the open glove compartment, these items were retrieved from the vehicle and appellant was subsequently placed under arrest. The vehicle was then inventoried and towed per RTA policy. Additionally, neither officer was able to identify the pills on the scene as being over-the-counter or prescription drugs, and no other evidence was found to indicate that a valid prescription for the pills existed. Officer Ventura stated that he believed they were not over-the-counter drugs since a brand name did not appear on any of the pills.

The officers later determined that the vehicle was not reported stolen and was registered to appellant's father.

After Officers Garner and Ventura testified, appellant testified on his own behalf. Appellant stated that at approximately 3:30 a.m., he was awakened by the RTA policemen and told to place his hands out the driver's window, open the door and exit the vehicle. After appellant complied, he claimed he was put on the ground, where he stayed for approximately forty-five minutes. Appellant told the officers it was his truck and gave them his driver's license.

Appellant further claimed that he told the officers the pills were over-the-counter Bufferin extra-strength pain relievers. Appellant also claimed that the officers took his keys, without permission, and went through the locked glove compartment where the glass pipe was found. After the search of appellant's truck, he was placed under arrest by the officers.

Based on the foregoing, the trial court overruled appellant's motion to suppress evidence, finding that the contraband was located in plain view when found by the officers. Appellant subsequently pleaded no contest, as indicated, to drug abuse in violation of R.C. 2925.11. The trial court sentenced appellant to a term of one year. Appellant timely appeals the trial court's decision to overrule his motion to suppress evidence.

It is axiomatic that the evaluation of the evidence and the credibility of witnesses at a suppression hearing are issues for the trial court as factfinder. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 981–982; *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 57–58, 437 N.E.2d 583, 584–585. Appellate courts will defer to the factual findings of the trial court when such findings are supported by competent, credible evidence. *State v. Klein* (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141, 1142–1143; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908. Accepting the findings of fact of the trial court as true, an appellate court must then independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court erred in applying the substantive law to the facts of the case. *Klein, supra; State v. McCulley* (Apr. 28, 1994), Cuyahoga App. No. 64470, unreported, 1994 WL 164013.

In its ruling pursuant to Crim.R. 12(E), the trial court determined that the evidence seized was found in *plain* view, and therefore such evidence would not be suppressed. Citing *State v. Claytor, supra*, 85 Ohio App.3d at 632–634, 620 N.E.2d at 911–913 (Harsha, P.J., concurring), the state argues such evidence was actually discovered in *open* view and was therefore not required to be suppressed.

We agree that a distinction should be made between evidence discovered in *plain* view, invoking Fourth Amendment analysis, and evidence discovered in *open* view, which does not invoke Fourth Amendment analysis. The distinction is most aptly described as follows:

" ' * * * The fact that there is a plain view in the *Coolidge* [*v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564] sense does not mean that there has been no search; indeed, the situations described by Justice Stewart are in the main search situations—search pursuant to a warrant naming other objects, search during hot pursuit, search incident to arrest, and a search for purposes other than finding evidence. Rather, the effort in *Coolidge* is to describe when items so found may be seized even though they were not the items which were legitimate objectives of that search. The *Coolidge* plurality identifies three requirements: (1) there must be a prior valid intrusion; (2) the discovery of the seized items must be inadvertent; and (3) it must be immediately apparent to the police that they have evidence before them. The significance of these requirements in terms of justifying a warrantless seizure of evidence is discussed at several points in this Treatise.

" '*By comparison, the concern here is with plain view in a quite different sense, namely, as descriptive of a situation in which there has been no search at all in the Fourth Amendment sense. This situation, which perhaps is deserving of a different label so as to avoid confusion of it with that discussed in Coolidge, encompasses those circumstances in which an observation is made by a police*

*officer without a prior physical intrusion into a constitutionally protected area. This includes* the case in which an officer discovers an object which has been left in an "open field" or similar nonprotected area, and also *those cases in which an officer—again, without making a prior physical intrusion—sees an object* on the person of an individual, within premises, or *within a vehicle.* In each of these instances there has been no search at all because of the plain view character of the situation, and this means that the observation is lawful without the necessity of establishing either pre-existing probable cause or the existence of a search warrant or one of the traditional exceptions to the warrant requirement.

" 'It is extremely important to understand that the kind of plain view described in the preceding paragraph, because it involves no intrusion covered by the Fourth Amendment, need not meet the three requirements set out in the *Coolidge* plurality opinion. By definition, there is no prior valid intrusion. Whether it is immediately apparent that what has been observed is evidence of crime may have a bearing upon what the police may do as a result of this nonsearch observation, but it is clearly irrelevant to the threshold issue of whether the observation was a search.' (Footnotes omitted and emphasis added.) 1 LaFave, Search and Seizure (2 Ed.1987) 321–322, Section 2.2(a).

"Other commentators have chosen to characterize this situation as being in 'open view' rather than confusing the issue with the plain view denomination. Nonetheless, the importance of the distinction focuses upon the fact that there is no Fourth Amendment right to privacy involved here. Accordingly, since the Fourth Amendment does not apply, no Fourth Amendment analysis is needed or appropriate.

"As a general rule, one does not have a reasonable expectation of privacy in common or public areas. When others have access to an area, the accused assumes the risk that others will observe items left in open view. While the accused may have a subjective expectation of privacy in his car while parked in a business lot, it is not one which this court, or more importantly, society is prepared to recognize as reasonable." *Claytor, supra,* 85 Ohio App.3d at 632–633, 620 N.E.2d at 911–913 (Harsha, P.J., concurring); See, also, *Randall v. State* (Fla.App.1985), 458 So.2d 822; *State v. Farkes* (1984), 71 Ore.App. 155, 691 P.2d 489; and *State v. Myrick* (1984), 102 Wash.2d 506, 688 P.2d 151.

In the present case, appellant was asleep in his father's pick up truck, which was parked in an RTA parking lot. At the time the RTA officers investigated appellant's vehicle, the parking lot was closed to the public. Appellant can hardly claim to have a constitutionally recognized expectation of privacy in a common or public area such as the RTA parking lot. Moreover, the pills observed on the dashboard and the straight shooter observed inside the open glove compartment were visible to the officers from outside the vehicle. Finally,

our analysis is not necessarily affected by the fact that appellant was asked to exit the vehicle prior to discovery of the contraband since the contraband was open to observation from outside the vehicle.

Having observed the contraband from outside the vehicle, Officers Garner and Ventura were justified in seizing it pursuant to the automobile exception to the Fourth Amendment warrant requirement. See *Carroll v. United States* (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; *United States v. Ross* (1982), 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572; *California v. Carney* (1985), 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406; *State v. Kessler* (1978), 53 Ohio St.2d 204, 7 O.O.3d 375, 373 N.E.2d 1252; and *State v. Fadenhotz* (June 13, 1991), Cuyahoga App. Nos. 60865 and 60866, unreported, 1991 WL 106055.

■ Even assuming that a plain view analysis is to be applied to the facts *sub judice,* we conclude that Officers Garner and Ventura were justified in seizing the contraband in question. See *Horton v. California* (1990), 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112; *Texas v. Brown* (1983), 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502; *State v. Halczyszak* (1986), 25 Ohio St.3d 301, 25 OBR 360, 496 N.E.2d 925; and *State v. Gonzalez* (Aug. 18, 1994), Cuyahoga App. No. 66120, unreported, 1994 WL 449445. In the present case, Officers Garner and Ventura were fully justified in approaching the suspicious-looking vehicle and, upon observing appellant inside, asking him to step out of the vehicle. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Evans* (1993), 67 Ohio St.3d 405, 618 N.E.2d 162. Officers Garner and Ventura were, therefore, lawfully in a position from which they could observe the contraband in plain view inside appellant's vehicle. *Fadenhotz, supra,* at 3.

Based on the foregoing, we conclude the trial court did not err in overruling appellant's motion to suppress evidence.

*Judgment affirmed.*

SPELLACY, P.J., KRUPANSKY and NUGENT, JJ., concur.