This is an appeal from the judgment of the Chillicothe Municipal Court finding appellant guilty of operating a motor vehicle while intoxicated, in violation of R.C. 4511.19(A)(3). Appellant appeals from the denial of his motion to suppress the results of a breath test performed on him the night of his arrest. We affirm the decision of the trial court.
 Statement of the Case
On March 14, 1998, at approximately 8:00 p.m., Trooper Karwatske of the Ohio State Highway Patrol was traveling northbound on State Route 104, in Ross County, Ohio. He there observed appellant traveling southbound at a high rate of speed, subsequently established by radar to be seventy-eight m.p.h., or twenty-three m.p.h. above the posted limit of fifty-five m.p.h.
Appellant stopped promptly after the trooper activated his flashing lights. The trooper later testified at the suppression hearing that, upon approaching the vehicle, he noticed an odor of alcohol when appellant rolled his window down. Subsequently, the trooper noticed that appellant's speech was slow and slurred. The trooper also observed a full bottle of beer on the back floor of appellant's vehicle.
Trooper Karwatske requested appellant to exit his vehicle and to perform several field sobriety tests. The first test the trooper administered was a horizontal gaze nystagmus [hereinafter HGN] test. The trooper later testified that he observed six "clues" or indications of intoxication of the appellant from this test. Appellant was next asked to perform a "walk and turn" test, that is, to walk along a straight line, touching heel to toe, for several steps, turn, and repeat. The trooper observed what he described as one clue, that is, four times when appellant did not touch his heel to his toe.
The final field sobriety test was the one leg stand. The trooper instructed appellant to raise one foot six inches off the ground and count by "one thousands," e.g. one thousand-one, one thousand-two, etc. The trooper found that appellant completed this final test satisfactorily. Based on appellant's performance on all three tests, however, Trooper Karwatske placed the appellant under arrest for DUI.
Trooper Karwatske drove appellant to Chillicothe, where he administered a breath test. Appellant tested .144, or one hundred forty-four milligrams by weight of alcohol per two hundred and ten liters of breath.[1] The trooper then formally charged appellant with a violation of R.C. 4511.19(A)(3), operating a motor vehicle with a prohibited blood alcohol concentration and operating a vehicle under influence, or "OMVI," a violation of R.C. 4511.19(A)(1). Trooper Karwatske also charged appellant with exceeding the posted speed limit.
On March 23, 1998, appellant moved to suppress as evidence the results of the field sobriety tests and the breath test, as well as any statements he made to Trooper Karwatske on the evening of March 14, 1998. Appellant alleged that the trooper lacked probable cause for both the initial stop and the subsequent arrest for OMVI. Appellant alleged further that any statements he made to the trooper that evening were obtained in violation of his Fifth andFourteenth Amendment rights under the United States Constitution. Finally, appellant alleged that the Ohio State Highway Patrol improperly calibrated the breath analyzer used to check his breath that evening, and that Trooper Karwatske did not conduct the test in accordance with rules established by the Ohio Department of Health [hereinafter ODH].
Shortly after appellant filed his suppression motion, a defendant in a similar case in Wood County, Juan Manzanares, Jr., moved to suppress the results of his breath test. Mr. Manzanares based his motion on the failure of the Director of ODH to properly certify the alcohol and water solutions used to calibrate the breath analyzer, pursuant to Ohio Adm. Code 3701-53. On May 7, 1998, the Bowling Green Municipal Court granted Mr. Manzanares' motion to suppress, finding that the two batch solutions used, numbers 97010 and 97220, were not properly certified. State v. Manzanares (May 7, 1998), Bowling Green M.C. No. 98-TR-C-00337, unreported. The Manzanares court cited to an earlier Tuscarawas County decision, State v. Wolpe (Feb. 24, 1998), New Philadelphia M.C. No. TRC 9607745A-D, unreported, which had arrived at a similar conclusion regarding several contested breath tests before that court.
On August 17, 1998, the trial court consolidated this case with several other pending cases in the Chillicothe Municipal Court to consider the issues raised by Manzanares. Appellant's counsel and other defense counsel had discovered that the Ohio State Highway Patrol used these same batch solutions, numbers 97010 and 97220, to calibrate the breath analyzer used in Chillicothe. The court, therefore, directed the State and appellant's counsel to brief the court on this issue.
Based on the identical issue being raised by other local counsel, the state and counsel in this and other cases stipulated to the admission of certain evidence regarding the procedure to testing and certification of these calibration solutions. After consideration of this evidence, the trial court ruled on September 25, 1998, that the Director of the ODH had properly certified the calibration solutions in question. Further, the trial court found that any error induced in the readings of that particular breath analyzer by the use of the suspect calibration solutions did not prejudice the appellant. The trial court concluded that the calibration solution used actually caused the instrument to report breath-alcohol levels that were lower than the actual level of alcohol in the breath samples analyzed.
Appellant presented his other arguments for suppression of the evidence at a hearing held on November 18, 1998. After hearing the testimony of Trooper Karwatske and Lieutenant Whited of the Ohio State Highway Patrol (who testified as to calibration procedures regarding the breath analyzer in question), the trial court overruled appellant's motion to suppress. The appellant entered a plea of no contest to the charge under R.C. 4511.19(A)(3), and the State dismissed the OMVI charge under R.C. 4511.19(A)(1). On January 6, 1999, the trial court sentenced appellant to forty-five days in jail, with thirty days suspended, a fine of $200, and a six month license suspension. Appellant timely appeals the denial of his motion to suppress, presenting two assignments of error for our review:
 I. THE TRIAL COURT ERRED, TO THE PREJUDICE OF THE APPELLANT, BY NOT SUPPRESSING THE BREATH TEST RESULT ON THE GROUNDS THAT THE DIRECTOR OF THE OHIO DEPARTMENT OF HEALTH ABUSED HIS DISCRETION IN APPROVING THE ETHYL ALCOHOL SOLUTION USED TO CALIBRATE THE BREATH TEST INSTRUMENT UTILIZED IN THIS CASE.
 II. THE TRIAL COURT ERRED, TO THE PREJUDICE OF THE APPELLANT, BY FINDING THAT THE ARRESTING OFFICER HAD PROBABLE CAUSE TO ARREST APPELLANT.
 Opinion I
We will first review the appellant's contention that Trooper Karwatske lacked probable cause to arrest him for OMVI. If the trooper lacked probable cause to arrest the appellant, any evidence flowing from that arrest must be suppressed as the "fruit of the poisonous tree," in accordance with the doctrine enunciated in WongSun v. United States (1963), 371 U.S. 471, 9 L.Ed.2d 441,83 S.Ct. 407. The appropriate remedy for a constitutional violation is the suppression of any evidence obtained. See City of Kettering v. Hollen
(1980), 64 Ohio St.2d 232, 416 N.E.2d 598.
A motion to suppress is the proper vehicle for raising constitutional challenges based on the exclusionary rule. State v.French (1995), 72 Ohio St.3d 446, 650 N.E.2d 887. The appellant argues that the traffic violation coupled with nothing more than the arresting officer's perception of alcohol use does not provide the probable cause for an OMVI arrest. He cites State v. Taylor (1981),3 Ohio App.3d 197, 444 N.E.2d 481; State v. Finch (1985),24 Ohio App.3d 38, 40, 492 N.E.2d 1254, 1257; and State v. Hughart
(Feb. 23, 1990), Gallia App. No. 88CA21, unreported, in support of his position.
We note that appellant initially argued that Trooper Karwatske's traffic stop was improper. Appellant withdrew this argument at the evidentiary hearing on his motion to suppress. Therefore, the issue before us is not whether the trooper had probable cause to stop the appellant, based on the traffic violation, but whether the trooper had probable cause to arrest the appellant for OMVI after that traffic stop.
In Taylor, at 197-198, the court found "the act of only nominally exceeding the speed limit coupled with the arresting officer's perception of the odor of alcohol (not characterized as pervasive or strong), and nothing more, does not furnish probable cause to arrest an individual for driving under the influence of alcohol." It appears that Taylor was traveling at sixty-five m.p.h. in a fifty m.p.h. zone. Here, Trooper Karwatske found the appellant traveling at seventy-eight m.p.h. in a fifty-five m.p.h. zone. Before the traffic stop, Trooper Karwatske testified that he did not notice any lack of control or other behavior that would have indicated appellant was intoxicated.
In Finch, the arresting officer received a report of an altercation allegedly involving the defendant. The arresting officer arrived at the scene just as Finch was driving away and directed the defendant to pull over to the side of the road. Approaching the car, the officer detected a strong odor of alcohol and observed the defendant's slurred speech and bloodshot eyes. At that point, she arrested the defendant for operating a motor vehicle while intoxicated.
In Hughart, witnesses accused the defendant of menacing certain persons at a Holiday Inn. A deputy sheriff found the defendant in his car, and, upon arresting him for the menacing charge, requested a urine sample. When the tests of the urine sample for alcohol exceeded statutory limits, the State charged the defendant with OMVI.
We note one important difference between these cited cases, relied upon by the appellant, and the case at bar. In each of the three cited cases, the arresting officer relied solely upon the defendant's initial appearance of intoxication to support the arrest. None of the officers supported this conclusion with field sobriety tests. "Probable cause is not needed before an officer conducts field sobriety tests. Reasonable suspicion of criminal activity is all that is required to support further investigation." Columbus v. Anderson
(1991), 74 Ohio App.3d 768, 770, 600 N.E.2d 712, 714, citing State v.Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489. See, e.g., State v.Snider (July 28, 1999), Medina App. No. 2924-M, unreported; State v.Burghardt (July 16, 1999), Erie App. No. E-98-060, unreported; Statev. Moore (June 29, 1999), Lawrence App. No. 98CA44, unreported.
As we stated in Moore, in determining whether a police officer had probable cause to arrest an individual for violating R.C. 4511.19, we employ a "totality of the circumstances" approach. See State v.Medcalf (1996), 111 Ohio App.3d 142, 147, 675 N.E.2d 1268, 1271;State v. McCaig (1988), 51 Ohio App.3d 94, 554 N.E.2d 925, 926;Atwell v. State (1973), 35 Ohio App.2d 221, 226-227, 301 N.E.2d 709,713. From the testimony of Trooper Karwatske at the suppression hearing, we find that the appellant exhibited six out of six "clues" or indications of intoxication on the HGN test. On the "walk and turn" test, he failed to touch his heel to his toe four times, counted as one clue by the trooper. Finally, although he did "pretty good" on the one-leg stand test, he began to count incorrectly and did not raise his foot very high.
The trial court observed that the HGN test has been accepted as a reliable indicator of intoxication, hence that court found the six positive "clues" on this test significant, citing State v. Bresson
(1990), 51 Ohio St.3d 123, 554 N.E.2d 1330. As the Supreme Court of Ohio noted in Bresson, "the HGN test has been shown to be a reliable indicator of BAC levels." Bresson at 128, 554 N.E.2d at 1334. The court cautioned in the syllabus that this test should not be used to establish the exact BAC (blood-alcohol concentration) level.
The trial court found four clues, not one, in the walk and turn test. The trial court concluded that Trooper Karwatske had a reasonable belief that the appellant was under the influence of alcohol despite the successful performance in the one-leg stand test. Hence, considering the "totality of the circumstances," the trial court found probable cause for the arrest.
Our review of a ruling on a motion to suppress evidence presents a mixed question of law and fact. We are bound to accept the factual determinations of the trial court from the suppression hearing so long as competent and credible evidence supports these factual determinations. State v. Harris (1994), 98 Ohio App.3d 543, 546,649 N.E.2d 7, 9; State v. Claytor (1993), 85 Ohio App.3d 623, 627,620 N.E.2d 906, 908; State v. DePalma (Jan. 18, 1991), Ross App. No. 1633, unreported. The application of the law to those facts, however, is then subject to de novo review. Harris. See, also, State v.Anderson (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034, 1036.
Based on the field sobriety tests administered, we find that Trooper Karwatske had sufficient probable cause to arrest the appellant for OMVI. An arrest for driving under the influence needs to be supported only by the arresting officer's observations of indicia of alcohol consumption and operation of a motor vehicle while under the influence of alcohol. State v. Van Fossen (1984),19 Ohio App.3d 281, 283, 484 N.E.2d 191, 193.
Accordingly, we OVERRULE the appellant's Second Assignment of Error.
 II
Appellant's First Assignment of Error does not raise a constitutional challenge to the admission of evidence. Instead, his challenge is to the weight that should be accorded to any evidence obtained by the analysis of his breath for presence of alcohol. Appellant contends that the check solution used to calibrate the breath analyzer did not meet the requirements of the ODH and was, therefore, untrustworthy. We note that the Supreme Court of Ohio found that a motion to suppress is the appropriate procedural mechanism to challenge the validity of breath test results because of non-compliance with ODH regulations. See Defiance v. Kretz (1991),60 Ohio St.3d 1, 573 N.E.2d 32.
In State v. Brockway (1981), 2 Ohio App.3d 227, 231-232,441 N.E.2d 602, 607, we ruled that:
 It is evident that the General Assembly intended, because of the numerous types of equipment and procedures available for such alcohol tests, to achieve uniformity in testing in Ohio by delegating to the Director of Health authority to choose and approve of the specific tests and procedures to be used in Ohio.
For blood alcohol test results to be admissible in a criminal prosecution, the state must show:
 1. The test was conducted within two hours of the alleged violation;
 2. The test was conducted and analyzed in accordance with the methods approved by the Director of Health; and
3. The test was conducted by a qualified individual.
 Cincinnati v. Sand (1975), 43 Ohio St.2d 79, 330 N.E.2d 908, paragraph one of the syllabus.
The appellant raises a very narrow issue. He does not dispute the timeliness of the test or Trooper Karwatske's qualifications to conduct the test. Nor does he claim the administration of the test was not in accordance with methods approved by the Director of ODH.
Instead, his challenge is to the accuracy of the alcohol and water check solution used to calibrate the breath analyzer. ODH supplies all operators of breath analyzers in the state with standardized check solutions in small bottles. It appears that out of a typical one thousand eight hundred bottle batch, or lot, of check solution, the manufacturer will certify three bottles, while ODH would check a farther four bottles. The Director of Health for ODH certifies the accuracy of each bottle of check solution in a batch, based on this sample.
In 1996, OMVI defendants began to raise questions about the validity of tests performed by ODH to certify the accuracy of each batch of test solution. In some instances, the questions raised resulted in the suppression of the breath test results. City ofSidney v. Goodrich (1996), 81 Ohio Misc.2d 5, 673 N.E.2d 695; Statev. Workman (1996). 79 Ohio Misc.2d 26, 670 N.E.2d 315.
The instrument used to test appellant's breath was a Datamaster machine maintained by the Ohio State Highway Patrol. Trooper Karwatske tested the appellant's breath on March 14, 1998. Records supplied at the suppression hearing indicated that the last complete calibration of the machine was on July 2, 1997, using test solution from batch number 97010. The patrol performed a calibration re-check of the Datamaster machine on March 10, 1998, with a solution from batch number 97220. The Director of ODH certified this later check solution on September 30, 1997.
On October 20, 1997, the Marietta Municipal Court granted a motion to suppress test results from another machine calibrated by several different check solutions, including solution from batch number 97010. See State v. Norma Beardsley (Oct. 20, 1997), Marietta M.C. No. 97 TRC 4176, unreported. As we noted above, the New Philadelphia Municipal Court and the Bowling Green Municipal Court also rejected tests from machines calibrated using test, or check, solutions from batch numbers 97010 (Wolpe, supra) and 97220, (Manzanares, supra). At issue in each of these cases was the accuracy of the check solutions and whether the Director of ODH abused his discretion in approving these check solutions.
Subsequently, ODH tested random samples of the batch solutions then in use in the state and determined that these samples met the requirements of the applicable regulations. See discussion in Statev. Kimpton (May 13, 1999), Franklin App. No. 98AP-1048, unreported.
We have previously considered this issue in State v. Dunn (Sept. 14, 1999), Ross App. No. 98CA2468, unreported. In Dunn, we followed the lead of the Third Appellate District in State v. Miller (Dec. 15, 1998), Marion App. No. 9-98-42, unreported, in rejecting a challenge to the use of calibration solution from batch number 97220. We found no abuse of discretion by the Director of ODH in approving that check solution.
The Sixth Appellate District also followed the Miller decision, overturning the decision of the Bowling Green Municipal Court. Statev. Manzanares (April 16, 1999), Wood App. No. WD-98-033, unreported. The Wolpe case, relied upon by the trial court in Manzanares, has also been overturned on appeal: State v. Wolpe (Sept. 29, 1998), Tuscarawas App. No. 98AP030008, unreported, discretionary appeal disallowed (1999), 84 Ohio St.3d 1502.
We note that other courts have rejected similar challenges to the use of check solutions from batch numbers 97010 and 97220. See, e.g.,State v. Kimpton, supra, (Tenth Appellate District — batch number 97010); State v. Gronbach (July 1, 1999), Fairfield App. No. 98 CA 73, unreported (Fifth Appellate District — batch number 97220). However, we have been unable to discover any appellate decision that supports the appellant's position that these check solutions were unreliable or that would cause us to reconsider our position in Dunn.
Accordingly, we OVERRULE the appellant's First Assignment of Error and affirm the judgment of the trial court.
JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Chillicothe Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall earlier terminate if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
KLINE, P.J.: Concurs in Judgment and Opinion.
ABELE, J.: Concurs in Judgment Only.
 By: ________________________ DAVID T. EVANS, Judge
[1] R.C. 4511.19(A)(3) prohibits a person from operating a motor vehicle with "a concentration of ten-hundredths [.100] of one gram or more by weight of alcohol per two hundred ten liters of his breath."