OPINION
Appellant, John E. O'Hora, III, appeals from the denial of his motion to suppress evidence and the subsequent conviction and sentence for carrying a concealed weapon.
At approximately 12:30 a.m., on January 6, 2000, appellant experienced mechanical problems with his vehicle while on his way home from work. Appellant pulled over to the side of the road and turned off the vehicle's engine and lights. Willoughby Hills police officers Leonard Kratochvil ("Kratochvil") and Matthew Naegele ("Naegele") noticed appellant's vehicle and stopped to investigate. As they approached appellant's vehicle, appellant opened the driver's side door and began to exit the vehicle. The officers ordered him to remain seated in the vehicle, and appellant complied.
Naegele went to the driver's-side door and shined his flashlight into the vehicle. He noticed a twelve pack of beer located behind appellant's seat. Three of the cans were missing. He asked appellant if he had been drinking that night. Appellant promptly handed Naegele an open can of beer.
Naegele then asked appellant to exit his vehicle. Field sobriety tests were conducted. As a result of those tests, the officers determined that appellant was not driving while under the influence.
Naegele then instructed appellant to have a seat in the police cruiser. Appellant requested that he be permitted to close the window in his vehicle. When his request was denied, appellant appeared upset, but complied with the instruction to return to the police vehicle. Following a pat down search for weapons, appellant was placed in the back of the patrol car.
After appellant was seated in the patrol car, Kratochvil searched appellant's vehicle for the two other cans of beer that were missing from the twelve pack. He also retrieved the twelve pack because the unwritten policy of the Willoughby Hills police department is to seize all alcohol when an alcohol-related offense is committed. According to this policy, such alcohol is retained to be proffered as evidence in the case.
While looking for the two cans missing from the twelve pack of beer, Kratochvil shined his flashlight under the seat where a can could easily roll and discovered a loaded .38 pistol mounted underneath the driver's seat. At that point, appellant was arrested for carrying a concealed weapon.
Appellant was charged with the open container violation, a minor misdemeanor, and with carrying a concealed weapon, a fourth degree felony. Appellant pled guilty to the open container offense in the Willoughby Municipal Court. He does not challenge his conviction for the minor misdemeanor offense.
Appellant filed a motion to suppress evidence regarding the concealed weapon charge. He argued the search of his vehicle was unlawful because none of the exceptions to the Fourth Amendment warrant requirement were present. After holding a hearing, the trial court denied appellant's motion. Appellant then entered a plea of no contest to the charge. The trial court found appellant guilty and sentenced him to three years of community control sanctions. The trial court also sentenced appellant to serve sixty days in jail and ordered him to enter treatment programs, to abstain from alcohol or drug involvement during his probation, and to contribute two hundred hours of community service to a charity of his choice.
In his first assignment of error, appellant challenges the denial of his suppression motion. Appellant contends that the police seized the evidence during an unconstitutional and illegal search of his vehicle.
Appellant points out that he was not under arrest at the time the search was conducted, nor could the officers have arrested him for a minor misdemeanor offense. He also claims the police had no probable cause to believe contraband or other incriminating evidence would be discovered in his vehicle. He maintains the officers had all the evidence necessary, the open container, to convict him of the offense for which he was cited. Therefore, the officers had no reason to search for further contraband or evidence.
On review, an appellate court must accept the trial court's findings of fact if those findings are supported by competent, credible evidence.State v. Retherford (1994), 93 Ohio App.3d 586, 592. After accepting such factual findings as true, the reviewing court must then independently determine, as a matter of law, whether or not the applicable legal standard has been met. Id. at 592. The application of the law to the trial court's findings of fact is subject to a de novo
standard of review. State v. Harris (1994), 98 Ohio App.3d 543, 546.
If a search or seizure is conducted without a warrant, the state bears the burden of establishing that one of the recognized exceptions to this requirement is applicable. United States v. Jeffers (1951), 342 U.S. 48,51. In the instant matter, the initial encounter between the police officers and appellant was consensual as the police approached the disabled vehicle to provide assistance. An officer rendering assistance to a disabled vehicle may engage in a preliminary inquiry of the vehicle's occupants, as long as the inquiry is reasonable. State v.Norman (1999), 136 Ohio App.3d 46, 53.
A consensual encounter does not implicate Fourth Amendment protections unless the officer subsequently seizes the person, by means of physical force or show of authority, by restraining the person's liberty. Statev. Wise (Aug. 16, 2000), Licking App. No. 00CA00009, unreported, 2000 Ohio App.LEXIS 3704. A seizure occurred when appellant handed the officer the open can of beer and was asked to exit the vehicle so field sobriety tests could be performed. Once a seizure occurs, Fourth Amendment protections prohibiting unreasonable searches and seizures are applicable. Id.
The dispute between the parties centers on the search of appellant's vehicle after the police decided to issue a citation for an open container violation. The state contends the automobile exception is applicable under the facts of this case. This exception to the warrant requirement permits police to conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband or other evidence that is subject to seizure and that exigent circumstances necessitate a search or seizure. State v. Mills (1992),62 Ohio St.3d 357, 367. The police officer may then search every part of the car that could conceal the object of the search. Mentor v. Kinkopf
(June 9, 2000), Lake App. No. 99-L-034, unreported, 2000 WL 757736, at 4. The scope of the search is defined by the object of the search and the places in which there is probable cause to believe that the contraband may be found. See United States v. Ross (1982), 456 U.S. 798, syllabus.
The state argues that any additional beers discovered in appellant's vehicle would be evidence subject to seizure. The state also points to the police officers' other stated concern that appellant would open and consume any other alcoholic beverage left in the vehicle after they left the scene.
Here, Kratochvil testified at the suppression hearing that his purpose in searching appellant's vehicle was to seize any additional containers of alcohol, open or unopened, to be used as exhibits at trial:
 "A. *** I told [Naegele], `Write up the citation for the open container, I'm going to go back to the car and get the 12 pack of beer and check for any others.'
"***
 "Q. Now when you say you went back to the vehicle what was the purpose of you going back to the vehicle?
 "A. To get the 12 pack of beer and look for additional beers in the car.
 "Q. Okay, did you notice anything in particular about that 12 pack of beer?
 "A. Well, when we had the initial approach the 12 pack wasn't lying flat down, it was like high end up, I'm going to call it, long way up and the top part had been opened, you could see the top section was empty where there should be some cans of beer, so he had handed us the one and I assumed there [were] some missing so I proceeded to search for them and that's when I spotted the weapon under the seat.
"Q. Why did you look underneath the seat?
"***
 "A. When I did, initially looked around inside with the flashlight I didn't see any cans so I looked under the seat [because] that's where they could roll quite easily.
 "Q. When you say, `They could roll quite easily'; what are you referring to?
"A. The cans, cans of beer.
"***
 "Q. And what has been your experience as far as obtaining this contraband such as beer?
 "A. Okay, standard procedure we've always done, we always will do, is when we get an alcohol related offense like an open container, DUI, underage consumption, we seize all the beer or whatever liquor is in the car whether it be open or unopen and we log all that in as exhibits and we use all that in our case."
 The violation at issue was for having an open container of alcohol in a vehicle. The police officers noticed a twelve pack of beer in appellant's vehicle. As we noted earlier, the Willoughby Hills Police Department has a policy requiring the removal of any alcoholic beverages from a vehicle after a violation related to alcohol takes place. While this policy might serve a salutary purpose, it may well run afoul of the Fourth Amendment under the given circumstances.
However, apart from the departmental policy of seizing all containers of alcohol, Kratochvil had a legitimate purpose in searching appellant's vehicle. Three cans were missing from the twelve pack in appellant's vehicle. Appellant gave the officer the can he was drinking, and nine cans were still in the twelve pack, leaving two of the twelve cans unaccounted for at the time of the stop. If Kratochvil had found two additional open containers in the vehicle, the discovery of those containers could have potentially provided evidence of separate offenses for violation of the open container law distinct from the charge stemming from appellant handing the officers a single open can of beer. This factual predicate provided a probable cause basis to search for other violations. Further, Kratochvil restricted his search to locations inside the vehicle where an empty can of beer likely would be found, such as under the seat. Given these circumstances, the search was reasonable, and the trial court did not err by denying appellant's motion to suppress. Consequently, appellant's first assignment of error is overruled.
In his second assignment of error, appellant contends the trial court erred in sentencing him without first considering the relevant sentencing factors. Appellant argues his conduct was less serious than that normally constituting the offense and that he is unlikely to commit future crimes. Appellant states that the only reason given by the trial court for the terms and conditions of his sentence was the trial court's beliefs concerning his use of alcohol. Appellant submits that the conditions imposed relating to alcohol were not related to the offense of carrying a concealed weapon.
A trial court, sentencing a felony offender, must impose a sentence that is reasonably calculated to achieve the overriding purposes of sentencing, which are to protect the public from future crimes by the offender and others and to punish the offender. R.C. 2929.11(A) and (B). Unless a mandatory prison term is required, a trial court has discretion to determine the most effective method to comply with the purposes of sentencing set forth in R.C. 2929.11. R.C. 2929.12(A). In exercising this discretion, a trial court must consider the factors set out in R.C. 2929.12(B) and (C), concerning the seriousness of the offense, and the factors set forth in R.C. 2929.12(D) and (E), pertaining to the likelihood of recidivism. R.C. 2929.12(A). A trial court also may consider any other factor relevant in achieving the above-stated purposes of sentencing. Id.
After considering the factors of R.C. 2929.12, concerning the seriousness of the offense and the likelihood of recidivism, a trial court is guided by R.C. 2929.13 in deciding what sanction to impose on a felony offender. In particular, in sentencing an offender for a felony of the fourth degree, the trial court must make a determination as to whether any of the factors in R.C. 2929.13(B)(1) apply. If a trial court determines that none of the factors described in R.C. 2929.13(B)(1) apply and, after considering the factors of R.C. 2929.12, finds that community control sanctions are consistent with the purposes of sentencing, then the trial court must impose a sentence of community control sanctions. R.C. 2929.13(B)(2)(b).
An appellate court reviews a felony sentence de novo. R.C. 2953.08(G)(2);State v. Wilson (June 23, 2000), Lake App. No. 99-L-026, unreported, 2000 WL 816641, at 2. However, a defendant's sentence will not be disturbed absent clear and convincing evidence that the record does not support the sentence or that the sentence is contrary to law. State v. Thomas (July 16, 1999), Lake App. No. 98-L-074, unreported, 1999 WL 535272, at 4.
This court has held that an appellate court will reverse a sentence if the appellant demonstrates that the trial court erred or abused its discretion by failing to consider the sentencing factors. State v.Muhammad (Dec. 8, 2000), Ashtabula App. No. 99-A-0080, unreported, 2000 WL 1804342, at 2. "`[I]t is the trial court's findings under *** 2929.11, 2929.12, 2929.14, and 2929.19 which in effect, determine a particular sentence and that a sentence unsupported by these findings is both incomplete and invalid.'" State v. Sparks (Aug. 16, 2001), Union App. No. 14-01-03, unreported, 2001 WL 929374, at 4, quoting State v.Bonanno (June 24, 1999), Allen App. No. 1-98-59 and 1-98-60, unreported. The sentencing statutes lay out extensive requirements that must be complied with by a trial court to ensure the validity of its sentencing decision. State v. Martin (1999), 136 Ohio App.3d 355, 360.
If the trial court fails to make the required findings, then the appellate court must remand the matter to the trial court, instructing the trial court to state, on the record, its requisite findings. R.C2953.08(G)(1). An appellate court's review "would be reduced to combing through the trial record in a speculative attempt to discover what factors the trial court may have relied upon in determining the length of a prison term or the conditions of a community control sanction."Martin, supra, at 361. A trial court is in the best position to make the fact-intensive determinations required by the sentencing statutes since it has the opportunity to observe the demeanor of the defendant and to judge the impact of the crime upon the victims and society. Id.
The judgment entry of sentencing states the trial court considered the factors set forth in R.C. 2929.13(B), but found none of the factors applied. The court stated it balanced the seriousness and recidivism factors of R.C. 2929.12, and that it found appellant was amenable to community control sanction. At the sentencing hearing, the trial court extensively discussed appellant's use of alcohol, but barely mentioned the concealed weapon.
A review of the factors found in R.C. 2929.13(B) shows that none are applicable. The factors concerning the seriousness of an offense are found in R.C. 2929.12(B) and (C). None of these factors fit the facts of this case. As far as recidivism, only R.C. 2929.12(D)(4) regarding a pattern of alcohol abuse is applicable although it is not clear from the record whether appellant's use of alcohol was related to his act of concealing a weapon in his vehicle. The trial court did not discuss any factor other than appellant's use of alcohol before imposing sentence. Without a discussion of what factors it relied upon in determining a sentence, the trial court does not make the required findings on the record enabling this court to adequately review the sentence imposed upon a defendant. Therefore, appellant's second assignment of error is well-taken.
The judgment of the Lake County Court of Common Pleas is affirmed in part, reversed in part, and remanded for re-sentencing.
O'NEILL, P.J., concurs, GRENDELL, J., concurs with Concurring Opinion.