JOURNAL ENTRY and OPINION
{¶ 1} Appellant Antonio Spencer appeals the trial court's denial of his motion to suppress. Spencer assigns the following error for our review:
"I. The trial court erred when it denied the defendant's motion for suppression of evidence."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} On January 5, 2005, the Cuyahoga County Grand Jury indicted Spencer for one count each of drug possession, drug trafficking, possession of criminal tools, and resisting arrest. At his arraignment, Spencer pled not guilty to the indictment and subsequently filed a motion to suppress, which the trial court denied.
 COURT'S FINDINGS {¶ 4} After receiving testimony at the suppression hearing, the trial court made the following findings:
"After considering the evidence and reviewing the briefs, I'm going to deny the motion to suppress. In particular, I believe the officers were justified, based on the defendant's reaction of turning quickly, going back to the door, looking over his shoulder and knocking, to at least approach the defendant, even though I don't think there's Terry implications at all. I don't find the testimony of Marilyn Hampton credible because she testified that she — the defendant was halfway in her back door when he was allegedly seized, although she never even saw him seized. So that testimony I'm going to discount. I believe that the defendant, on the approach of the officers, dropped the cassette package or holder, or whatever you call it, and then took off. And at that point his fleeing was certainly grounds to justify his subsequent seizure and patting down by the officers."[1]
 {¶ 5} Upon reviewing the record, we conclude that the court's findings are supported by competent, credible evidence. The State presented two officers, Ereg and Kutz, who testified that on the night of December 2, 2004, while on routine patrol in a high crime area, they encountered Spencer walking westbound in the vicinity of 1545 Crawford Avenue.
 {¶ 6} Officer Ereg testified that when Spencer saw the patrol car, he immediately turned away and started knocking on the rear sliding glass door of an apartment, saying "Let me in, let me in." While he was knocking, Spencer looked nervously over his shoulders.
 {¶ 7} Officer Ereg exited the patrol car, approached Spencer, and inquired what he was doing there. Spencer stated that his girlfriend lived in the apartment. Officer Ereg stated that as he got closer, he could see a woman on the other side of the sliding doors, looking through the blinds, but she made no attempt to open the door. When Officer Ereg was within five to seven feet, Spencer dropped from his person a compact disc case containing a digital scale with cocaine residue; after he dropped the case, he fled.
 {¶ 8} Officer Ereg pursued and apprehended Spencer about twenty feet away. During the subsequent pat down search, Officer Ereg felt a bulge in Spencer's left pant pocket, which he immediately recognized as crack cocaine. Officer Ereg retrieved a bag containing crack cocaine from Spencer's pocket.
 {¶ 9} Officer Kutz testified consistently with Officer Ereg. In addition, Officer Kutz testified that after they had Spencer in custody, he spoke with Marilyn Hampton, the woman they had seen on the other side of the sliding glass door, to confirm whether she was Spencer's girlfriend. Officer Kutz learned that Spencer was a friend and Hampton did not open the door because she did not want any trouble in the house.
 {¶ 10} Spencer testified that he had been knocking on the door for about two minutes before the officers arrived. He stated that when Officer Ereg attempted to grab him, he dropped the scale and fled. Spencer also stated that Hampton did not immediately open the door because they had an argument earlier in the day. In addition, while he was knocking on the door, Hampton was talking on the telephone.
 {¶ 11} Hampton testified that she did not immediately open the sliding door when Spencer knocked because she was angry with him. However, she stated that she eventually removed the stick and Spencer opened the door a little, but did not come in. Hampton contradicted her previous statement when she testified that she moved the stick, and Spencer was halfway in the apartment, but that she did not see any interaction between the police and Spencer.
 MOTION TO SUPPRESS {¶ 12} In his sole assigned error, Spencer argues the trial court erred in denying his motion to suppress. We disagree.
 {¶ 13} An appeal of a trial court's ruling on a motion to suppress evidence involves mixed questions of law and fact. Initially, we note that in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.[2] Thus, the credibility of witnesses during a suppression hearing is a matter for the trial court. A reviewing court should not disturb the trial court's findings on the issue of credibility.[3] Accordingly, in our review we are bound to accept the trial court's findings of fact when they are supported by competent, credible evidence.[4]
 {¶ 14} The Fourth and Fourteenth Amendments to the United States Constitution prohibit any governmental search or seizure, including a brief investigative stop, unless supported by an objective justification.[5] Section 14, Article I of the Ohio Constitution protects the same interests in a manner consistent with the Fourth Amendment to the United States Constitution.[6]
 {¶ 15} In Terry v. Ohio,[7] the United States Supreme Court held that a police officer may stop and investigate unusual behavior, even without probable cause to arrest, when he reasonably concludes that the individual is engaged in criminal activity. In assessing that conclusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.[8] Furthermore, the standard against which the facts are judged must be an objective one: "[W]ould the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?"[9]
 {¶ 16} An objective and particularized suspicion that criminal activity was afoot must be based on the entire picture, a totality of the surrounding circumstances.[10]
Furthermore, these circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.[11]
 {¶ 17} In the instant case, our analysis of the totality of the circumstances begins with the officers' observation of Spencer's reaction upon seeing them. Officer Ereg testified that in response to their arrival, Spencer, who had been walking westbound, turned away and approached the nearest apartment. Spencer proceeded to knock nervously on the sliding glass door, while repeatedly looking over his shoulders at the officers. Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion.[12]
 {¶ 18} In addition, as Officer Ereg approached, he observed a woman in the apartment looking through the blinds, she made no attempt to open the door for Spencer. This, Officer Ereg testified, furthered his suspicions.[13] Based on Spencer's nervous reaction, the woman's refusal of entry, and the high crime area, Officer Ereg was justified in making an investigatory stop.
 {¶ 19} Further, when Officer Ereg was within five-to-seven feet, Spencer threw down the compact disc case and fled. Flight is the consummate act of evasion. It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.[14] Under the circumstances, Officer Ereg was justified in suspecting that Spencer was involved in criminal activity and, therefore, in investigating further.
 {¶ 20} Finally, despite Spencer's argument to the contrary, we conclude, Spencer's seizure occurred after he fled, was pursued, and tackled to the ground. A seizure does not occur simply because a police officer approaches and asks a question.[15] Here, the more credible evidence indicates that Officer Ereg approached and asked Spencer what he was doing. Spencer responded by dropping the compact disc case and fleeing. Therefore, he abandoned the property. The crack cocaine recovered from Spencer after he was apprehended was not the fruit of the poisonous tree. Consequently, his motion to exclude evidence of it was properly denied. Accordingly, we overrule his sole assigned error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, Jr., P.J., and Rocco, J., Concur.
[1] Tr. at 53-54.
[2] See State v. Robinson (1994), 98 Ohio App.3d 560; Statev. Rossiter (1993), 88 Ohio App.3d 162; State v. Lewis (1992),78 Ohio App.3d 518; State v. Warren (Aug. 12, 1991), 4th
Dist. No. 90CA7.
[3] See State v. Mills (1992), 62 Ohio St.3d 357; State v.Fanning (1982), 1 Ohio St.3d 19.
[4] See State v. Harris (1994), 98 Ohio App.3d 543.
[5] United States v. Cortez (1981), 449 U.S. 411, 417; Reidv. Georgia (1980), 448 U.S. 438, 440; Terry v. Ohio (1968),392 U.S. 1, 19.
[6] State v. Lindway (1936), 131 Ohio St. 166; State v.Burkholder (1984), 12 Ohio St.3d 205.
[7] (1968), 392 U.S. 1.
[8] Id. at 21.
[9] Id. at 21-22.
[10] State v. Bobo (1988), 37 Ohio St.3d 177; United Statesv. Rickus (C.A. 3, 1984), 737 F.2d 360, 365.
[11] United States v. Hall (C.A.D.C. 1976), 525 F.2d 857,859; State v. Freeman (1980), 64 Ohio St.2d 291, 295.
[12] State v. Burnett (April 8, 2003), 10th Dist. No. 02AP-863, 2003-Ohio-1787; See also Illinois v. Wardlow (2000),528 U.S. 119, 124, 145 L.Ed.2d 570, 120 S.Ct. 673.
[13] Tr. at 13.
[14] United States v. Cortez (1981), 449 U.S. 411, 418,66 L.Ed.2d 621, 101 S.Ct. 690.
[15] Terry, supra.