JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant Angel Hernandez ("appellant") appeals the decision of the lower court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court.
 I. {¶ 2} According to the case, appellant was arrested by the Cleveland police on September 14, 2006. The grand jury returned a seven-count indictment against appellant, and he was arraigned on November 14, 2006. On August 8 and August 9, 2007, the lower court held a hearing on appellant's motion to suppress. On August 27, 2007, appellant's motion to suppress was denied and the case was set for trial.
 {¶ 3} The case was tried before a jury from September 17 to September 19, 2007. The lower court granted appellant's Crim. R. 29 motion as to counts one, two, and three, and the firearm specifications. On September 20, 2007, the jury returned a verdict of guilty on the remaining counts, four, five, six, and seven. On September 27, 2007, the court sentenced appellant to prison for one year on count four, one year on count five, six months on count six, and six months on count seven, with all sentences running concurrent. On October 22, 2007, appellant filed his notice of appeal with this court, seeking to have his convictions reversed.
 {¶ 4} According to the facts, Cleveland police detective Matos observed appellant making a suspected drug sale. After the alleged drug sale, appellant left the area in his vehicle. The vehicle was ultimately stopped by Lieutenant Pipoly. Appellant was arrested and was asked for his address. He stated that he lived at 11103 Arden Avenue in Cleveland. *Page 4 
Detective Matos was on the scene when appellant was arrested and told the other officers present that they were going to attempt to search the residence of appellant. Appellant then corrected himself and stated that he did not live at that address. Appellant stated that his girlfriend, Sheliane Martinez, lived at that address and he was just on his way there to bring her diapers. At no time did appellant object to the search of the residence; he only denied that he lived there.
 {¶ 5} The Cleveland police then proceeded to 11103 Arden Avenue and knocked on the door. Sheliane Martinez answered the door and Detective Matos asked Martinez whether she owned or rented the residence. Martinez responded, "we lease." Detective Matos then explained to Martinez that appellant was just arrested for selling drugs and requested the consent of Martinez to search the residence. Martinez freely gave consent to Detective Matos and signed a consent-to-search form. The consent form indicated that Martinez was the lessee of the residence and that her written permission was given voluntarily and without threats or promises of any kind.
 {¶ 6} As a result of the search, the police seized the following evidence: one .380 handgun, personal papers of appellant, one plastic baggie with the end cut, one razor knife with suspected cocaine residue, one plastic baggie with suspected PCP, one silver scale with suspected cocaine residue, and one plastic baggie with suspected cocaine. When the search was conducted, Detective Duller completed a search warrant inventory list, documenting all items seized as a result of the consent search. Martinez signed the inventory list. The police officers then left the residence. At no time during the search did Martinez object to the *Page 5 
search, ask the officers to stop searching, or ask the officers to leave her residence to tell the officers that she did not live there. The atmosphere during the search was described by the officers as cooperative and congenial.
 II. {¶ 7} Appellant's first assignment of error provides the following: "The trial court erred when it denied appellant's motion to suppress."
 {¶ 8} Appellant's second assignment of error provides the following: "The state failed to present sufficient evidence to sustain the convictions."
 {¶ 9} Appellant's third assignment of error provides the following: "Appellant's convictions are against the manifest weight of the evidence."
 {¶ 10} Appellant's fourth assignment of error provides the following: "Appellant was denied his constitutional right to a fair trial by the detective's improper comments while testifying."
 III. {¶ 11} Appellant argues in his first assignment of error that the trial court erred when it denied his motion to suppress. Our review of the trial court's decision to deny the motion to suppress is de novo. The Supreme Court of Ohio held in State v. Burnside, 100 Ohio St.3d 152,154, 2003-Ohio-5372, 797 N.E.2d 71, as follows: "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court *Page 6 
must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Internal citations omitted.)
 {¶ 12} Appellate review of a trial court's ruling on a motion to suppress presents mixed questions of law and fact. See State v.McNamara (1997), 124 Ohio App.3d 706, 710, 707 N.E.2d 539. An appellate court is to accept the trial court's factual findings unless they are "clearly erroneous." State v. Long (1998), 127 Ohio App.3d 328, 332,713 N.E.2d 1. We are, therefore, required to accept the factual determinations of a trial court if they are supported by competent and credible evidence. State v. Harris (1994), 98 Ohio App.3d 543, 546,649 N.E.2d 7. The application of the law to those facts, however, is then subject to de novo review. Id.
 {¶ 13} Here, appellant argues that the police violated his constitutional rights when they entered and searched his residence without a search warrant or exigent circumstances. Appellant further argues that the police violated his constitutional rights by searching his home without getting the proper consent from him or from Martinez. Contrary to appellant's assertions that the home was searched without a valid warrant or any exigent circumstances, the evidence does not support appellant's argument. A review of the record confirms that the search of the home was incident to voluntary consent from appellant's girlfriend, Ms. Martinez. Moreover, Martinez told the police that she resided in the home with appellant. *Page 7 
 {¶ 14} In addition, appellant's argument concerning Martinez's age is not well founded. The totality of the circumstances demonstrates support for the search. Martinez's actions demonstrated that she was the lessee with authority and control over the premises. A review of the evidence demonstrates a lack of merit in appellant's arguments. The lower court's ruling is supported by the following: 1) the search of the premises was conducted pursuant to a valid consent form signed by the lessee of the premises; 2) the appellant previously informed the police that the residence to be searched belonged to his girlfriend, Sheliane Martinez; 3) Martinez informed the police that she was the lessee of the premises and allowed them to enter and conduct the search; 4) Sheliane Martinez had common authority and control over the premises indicated by her allowing the police officers into her home and signing the consent-to-search form; 5) Martinez appeared to be residing in the residence based on her statement that she was the lessee, her answering the door in her bedclothes, her having her child asleep in an upstairs bedroom, and that she had control of the premises without the appellant being present; 6) based on the facts available to the police at the time, they had a reasonable good faith belief that Sheliane Martinez had common authority over the premises sufficient to obtain a consent-to-search the premises.
 {¶ 15} Accordingly, appellant's first assignment of error is overruled.
 {¶ 16} Due to the substantial interrelation between appellant's second and third assignments of error, we shall address them together. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. With respect to sufficiency of the evidence, sufficiency is a term of art meaning that legal standard *Page 8 
which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541.
 {¶ 17} Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may, nevertheless, conclude that the judgment is against the weight of the evidence. Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jurors that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, their verdict shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. Id.
 {¶ 18} As to a claim that a judgment is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a *Page 9 
new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. State v. Martin (1983),20 Ohio App.3d 172, 20 Ohio B. 215, 485 N.E.2d 717. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212.
 {¶ 19} The record in the case at bar verifies that significant evidence was presented at the trial court. Specifically, 1) appellant was observed making a hand-to-hand drug sale; 2) drugs were found in the truck where appellant made the drug sale; 3) a box cutter with residue on it and a baggie with its ends cut were found on appellant's dining room table; 4) a plastic bag with powder cocaine, a silver scale and handgun were all found in appellant's dining room bench seat drawer; 5) personal papers of appellant were found in the residence; 6) a large quantity of cocaine was found in a man's work coat inside appellant's residence.
 {¶ 20} We find that there was sufficient evidence for a jury to conclude that appellant had knowledge of the illegal items in his home and that they belonged to him. In addition, there is substantial evidence upon which the court could reasonably conclude that appellant committed the offenses charged. Moreover, there is nothing in the record to suggest that the jury lost its way and created such a miscarriage of justice as to require a reversal of appellant's conviction.
 {¶ 21} Accordingly, appellant's second and third assignments of error are overruled.
 {¶ 22} Appellant argues in his fourth assignment of error that he was denied his constitutional right to a fair trial by the detective's improper comments while testifying. *Page 10 
 {¶ 23} A prosecuting attorney's conduct during trial does not constitute grounds for error unless the conduct deprives the defendant of a fair trial. State v. York, Cuyahoga App. No. 87814, 2006-Ohio-6934;State v. Keenan (1993), 66 Ohio St.3d 402-405, 613 N.E.2d 203; State v.Gest (1995), 108 Ohio App.3d 248, 257, 670 N.E.2d 536. The touchstone of a due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.Smith v. Phillips (1982), 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78. The effect of the prosecutor's misconduct must be considered in light of the whole trial. State v. Durr (1991), 58 Ohio St.3d 86, 94,568 N.E.2d 674. Furthermore, a prosecutor is afforded wide latitude during closing argument, and it is within the trial court's sound discretion to determine whether a comment has gone too far. State v. Benge,75 Ohio St.3d 136, 1996-Ohio-227, 661 N.E.2d 1019.
 {¶ 24} A review of the record demonstrates nothing improper about the testimony given by Detective Matos. The testimony appellant disagrees with involves a line of questioning posed to Detective Matos concerning her search of the home appellant shared with Martinez. Detective Matos stated that Martinez told her the drugs were not hers and Detective Matos stated that she believed her.[1]
 {¶ 25} At no time was Detective Matos asked to comment on the testimony given by Martinez. In fact, Martinez had not yet testified in the trial when Detective Matos was questioned. The specific line of questioning only dealt with the police detective's actions in *Page 11 
searching the residence and finding the drugs. The questioning focused on how the police detective determined that the drugs belonged to appellant and how the detective reached her conclusion. In fact, this issue was raised again when Martinez was being cross-examined:
 "Q: You also said that the expression on Miss Martinez's face was one of surprise and that the surprise seemed legitimate in your estimation, which is the reason that you chose not to arrest her. Would that be a fair statement?
 A: That's correct."
 On redirect examination, this issue was again addressed, without objection:
 "Q: Again, did you have any reason to believe that these drugs were the possession of Sheliane Martinez when you were in the home?
 A: Can you say that again?
 Q: Did you have any reason to believe that these drugs belonged to Sheliane Martinez while you were in the home?
 A: No, because she stated she didn't know.
 Q: You said her reaction?
 A: She was like surprised, and awe.
 Q: You thought that was genuine?
 A: I thought that was genuine at the time, yes."
 {¶ 26} The entire line of questioning regarding this issue goes to the detective's state of mind as to whom the drugs belonged to. The fact that the detective was asked whether she believed Martinez when she said the drugs were not hers is supported by Martinez's testimony. This testimony along with other evidence proved that the drugs belonged to *Page 12 
appellant. We find that the record reflects that the state did not ask Detective Matos her opinion on Martinez's testimony as alleged in appellant's assignment of error.
 {¶ 27} Accordingly, appellant's fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] Tr. 570-571. *Page 1