OPINION
{¶ 1} Defendant-appellant Timothy Wilson appeals his DUI conviction in Mahoning County Court No. 4. This court is asked to decide two issues. First, whether the trial court erred in overruling the motion to suppress evidence obtained from the stop. Second, whether the trial court erred in ruling that the state trooper properly administered the field sobriety tests, thus deeming the results permissible as evidence. Finding no merit with either of these arguments, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} On June 18, 2001, Wilson was traveling west in the right hand curb lane on Mahoning Avenue, a five-lane road in Austintown, Ohio. (Tr. 3). Trooper David Zatvarnicky observed Wilson's vehicle for approximately one to one and one-half miles. (Tr. 3). During this time, Trooper Zatvarnicky noted that the vehicle followed a pattern of driving toward the curb and then, before actually striking, "jerking" back into alignment, breaking the dotted center line to the left. (Tr. 3). Wilson's vehicle never contacted the curb. (Tr. 15). Trooper Zatvarnicky observed Wilson's vehicle veer towards the curb three times and cross the dividing line between the two westbound lanes two times. (Tr. 3).
 {¶ 3} After observing this, Trooper Zatvarnicky pulled Wilson over. (Tr. 5-6). Upon approaching the vehicle, Trooper Zatvarnicky noted the smell of alcohol coming from the vehicle. (Tr. 6). He also noted that Wilson's eyes were glassy and bloodshot. (Tr. 6). Additionally, Wilson had a difficult time presenting his license, and when he attempted to retrieve the requisite paperwork from his glove box, it was difficult for him to get the key into the key hole to open the glove box. (Tr. 6-7).
 {¶ 4} Based on these occurrences, Trooper Zatvarnicky asked Wilson whether he had consumed any alcoholic beverages. Wilson replied he had not. Trooper Zatvarnicky next asked Wilson to exit his vehicle and perform three standard field sobriety tests. (Tr. 7).
 {¶ 5} The first of these was the horizontal gaze nystagmus (HGN) test, during which the officer observes the reactions of the subject's eyeballs as their gaze follows a horizontally moving object. (Tr. 7). Studies have shown that impaired persons' eyeballs will "jerk" or have difficulty following the moving object. Wilson failed this test. (Tr. 9).
 {¶ 6} Next, Trooper Zatvarnicky administered the walk and turn test, the first of two "divided attention" tests. (Tr. 9). The walk and turn test requires the subject to take nine steps heel-to-toe along a straight line, turn, and return to the starting point in the same manner. Wilson could not keep steady in the requisite position of right foot in front of left while instructions were given, but had to shift to keep balance. (Tr. 10). He also began the test before instructed to do so. (Tr. 10). Once the test began, Wilson could not touch heel to toe, raised his arms for balance and turned incorrectly. (Tr. 10). Wilson failed this test. (Tr. 10).
 {¶ 7} The final test was the one-leg stand test. (Tr. 10-11). This test requires the subject to stand on one foot while holding the other approximately six inches off of the ground. The subject must hold this position, while counting by thousands (one thousand one, one thousand two, etc.) for 30 seconds. In performing this test, Wilson swayed, raised his arms and hopped. (Tr. 11). Thus, Wilson failed the third test. (Tr. 11).
 {¶ 8} After administering the tests, Trooper Zatvarnicky placed Wilson under arrest for violating R.C. 4511.19(A)(1) and (A)(6), driving under the influence of alcohol. (Tr. 11-12). Trooper Zatvarnicky read Wilson his Miranda rights. (Tr. 11). Wilson was then transported to the State Patrol Post in Canfield where a breathalyzer test was administered. Wilson's B.A.C. registered as .213. Wilson was also charged with violating R.C. 4511.33, marked lanes, and R.C. 4513.263, seat belt.
 {¶ 9} After arraignment, Wilson filed a motion to suppress all evidence relating to the arrest for DUI. Wilson claimed a violation of his constitutional rights, claiming that the trooper had no basis for the stop, and thus the stop and arrest were improper and lacked probable cause. Wilson also asserted that the field sobriety tests were insufficient to establish probable cause because they were not properly administered.
 {¶ 10} A hearing was held on the matter, at which Trooper Zatvarnicky was the sole witness heard. The trial court denied the motion. Wilson consequently pled no contest. The court dismissed all violations except for the DUI, for which Wilson was found guilty. He was sentenced to three days in jail, a $350 fine, and his license was suspended for 180 days. Wilson timely appeals.
 ASSIGNMENT OF ERROR NO. ONE {¶ 11} "When the trial court found probable cause existed for the officer to arrest the defendant-appellant, the court erred due to the fact that the judge's decision to overrule the motion to suppress was not based upon sufficient evidence."
 {¶ 12} The appellate review of a motion to suppress presents a mixed question of law and fact. State v. Long (1998), 127 Ohio App.3d 328,332. During the hearing proceedings of a motion to suppress, the trial court assumes the role of trier of fact. Id. citing State v. Payne
(1995), 104 Ohio App.3d 364, 367; State v. Robinson (1994),98 Ohio App.3d 560, 570; State v. Rossiter (1993), 88 Ohio App.3d 162,166. A reviewing court is bound to accept the factual determinations of a trial court during a suppression hearing so long as it is supported by competent, credible evidence. State v. Harris (1994), 98 Ohio App.3d 543,546; State v. Clayton (1993), 85 Ohio App.3d 623, 627. The trier of fact is in the best position to evaluate contested matters of fact and assess witness credibility. State v. Hopfer (1996), 112 Ohio App.3d 521, 548, quoting State v. Venham (1994), 96 Ohio App.3d 649, 653. However, the application of the law to those facts is subject to a de novo standard of review. State v. Anderson (1995), 100 Ohio App.3d 688, 691; Harris,98 Ohio App.3d at 546.
 {¶ 13} Trooper Zatvarnicky was the only witness to testify at the suppression hearing. The trial court accepted his statements as a true depiction of the events. Wilson claims Trooper Zatvarnicky's testimony contains "inconsistencies" that would render it unreliable. However, Wilson fails to develop this argument by citing to specific instances. Additionally, as the state argues, Wilson did not request a specific finding of fact nor did he offer testimony that could weigh against the testimony of the trooper. After reviewing the testimony, we cannot conclude that the trial court's decision was not based on competent, credible evidence. Thus, the trial court did not abuse its discretion in accepting Trooper Zatvarnicky's depiction of the stop. Therefore the question becomes, did the trial court err in applying the facts to the relevant law.
 {¶ 14} The U.S. and Ohio Constitutions prohibit any governmental search or seizure, including a brief investigative stop, unless it is supported by an objective justification. Terry v. Ohio (1968), 392 U.S. 1,20-21; State v. Andrews (1991), 57 Ohio St.3d 86, 87. As such, before stopping a vehicle, a law enforcement officer must have a reasonable suspicion, based upon specific, articulable facts that an occupant is or has been engaged in criminal activity. See Delaware v. Prouse (1979),440 U.S. 648; Terry, supra; State v. Ball (1991), 72 Ohio App.3d 43, 46
citing Adams v. Williams (1972), 407 U.S. 143. So long as there is an articulable reasonable suspicion or probable cause that a traffic violation occurred or is occurring, the stop is constitutional. Daytonv. Erikson (1996), 76 Ohio St.3d 3, 12. This holding applies even to "a minor traffic violation." Id. at 12.
 {¶ 15} While Wilson acknowledges the Erikson holding, he argues that the only reason his vehicle was stopped was because he crossed the centerline of the westbound lanes. However, any violation, even a de minimus violation, is sufficient cause for a traffic stop. State v.Hicks, 7th Dist. No. 01CO42, 2002-Ohio-3207; State v. Hodge, 7th Dist. No. 01CA76, 2002-Ohio-3053; State v. Gross, 7th Dist. No. 01CA115, 2002-Ohio-3465. Specifically, it was stated in Hodge that "we must recognize that a violation of the law is exactly that — a violation." 7th Dist. No. 01CA76 at ¶ 27.
 {¶ 16} Trooper Zatvarnicky testified that Wilson crossed the boundary line of his lane a couple of times. (Tr. 3). This is a violation of R.C. 4511.33. No argument was made or evidence presented to show that Wilson did not violate R.C. 4511.33. Therefore, it was reasonable to conclude that Wilson violated R.C. 4511.33 and accordingly the facts supported the stop. Wilson's argument fails.
 {¶ 17} Wilson also argues that even if the stop was justified, sufficient evidence did not exist for the trooper to administer field sobriety tests on him. An officer must have reasonable suspicion, based on specific and articulable facts, to believe a person is under the influence of alcohol in order to administer field sobriety tests. SeeState v. Yemma (Aug. 9, 1996), 11th Dist. No. 95-P-0156. These grounds need not be based solely on the manner in which the person was driving. State v. Ullom, 7th Dist. No. 01BA7, 2002-Ohio-2796 at ¶ 16. Rather, the court must examine the totality of the circumstances to determine whether reasonable grounds existed, including a person's actions before, during and after driving the vehicle. Atwell v. State
(1973), 35 Ohio App.2d 221, 227.
 {¶ 18} In the instant case, Wilson was observed weaving within his lane, so much so that he crossed the centerline several times, in violation of R.C. 4511.33. Trooper Zatvarnicky noticed the smell of alcohol as he approached the vehicle. Upon reaching the vehicle, Trooper Zatvarnicky observed that Wilson's eyes were red and bloodshot. When asked to retrieve the necessary documents from his glove box, Wilson had difficulty with coordination and could not place the key in the keyhole to open the glove box. Wilson had to reattempt the act to successfully open the glove box.
 {¶ 19} Wilson argues that while the trooper testified that he could smell alcohol on Wilson, he could not state what type or how much. Wilson further alleges that the trooper, upon observing the physical indicators mentioned above, should have inquired as to the last time Wilson slept or if he was suffering from allergies. These arguments are unpersuasive.
 {¶ 20} Observing a person's impaired coordination in association with glassy eyes and the smell of alcohol is sufficient articulable facts to infer a reasonable suspicion of intoxication. See Gross, 7th Dist. No. 01CA115 (drifting in and out of lane, smell of alcohol and has bloodshot and glassy eyes present reasonable grounds to administer field sobriety tests); State v. Brickman (June 8, 2001), 11th Dist. No. 2000-P-0058 (speeding, odor of alcohol, had red, glossy eyes and admitted to having "a beer" are reasonable grounds for a field sobriety test);State v. Van Fossen (1984), 19 Ohio App.3d 281 (speeding, smell of alcohol, bloodshot eyes, slurred speech and impaired coordination are reasonable grounds to administer field sobriety tests). The ability to observe a person and tell how much and what type of alcohol he consumed is practically impossible and is not required to establish a reasonable articulable suspicion of intoxication. Furthermore, there is no requirement that a trooper question a driver as to when he last slept or if he had allergies, especially when the trooper smells alcohol emanating from the driver. Accordingly, the trooper had a reasonable suspicion that Wilson was intoxicated.
 {¶ 21} Lastly, Wilson would liken his case to that in Brickman,
where the court held that the investigating officer was not justified in further detaining appellee for field sobriety testing after an initial stop for speeding. Brickman, 11th Dist. No. 2000-P-0058. In that case, like the case sub judice, appellee smelled of alcohol and had red, glossy eyes. However, there is one very important distinguishing feature between the cases. In Brickman, the officer was impeached upon cross-examination due to the absence from his police report several factors he testified to in court. Id. The court said that, had the decision been based solely on the direct examination, the investigation would have been warranted. Id. Due to the impeached testimony, the investigation was not justifiable. Id. No such testimonial problems exist in the case at bar. As such, Wilson's comparison to Brickman is inaccurate.
 {¶ 22} In light of the totality of the aforementioned circumstances, Trooper Zatvarnicky had reasonable articulable suspicion that Wilson was driving under the influence of alcohol. The decision to administer field sobriety tests was lawful. This assignment of error is without merit.
 ASSIGNMENT OF ERROR NO. TWO {¶ 23} "The trial court erred to the prejudice of the appellant when it ruled that Trooper Zatvarnicky strictly complied with the National Highway Transportation Safety Administration testing procedures for field sobriety tests."
 {¶ 24} In State v. Homan (2000), 89 Ohio St.3d 421, the Supreme Court held that in order for the results from a field sobriety test to be considered as evidence showing probable cause for arrest, the test must have been administered in strict compliance with standard testing procedures. Id. at paragraph one of the syllabus. If the tests are administered in any manner that deviates from the standards, the results are unreliable and as such are not admissible. Id. at 424. The initial burden is upon the defendant to assert that field sobriety tests were not performed in strict compliance with field sobriety test standards. Statev. Rioux, 2d Dist. No. 2001-CA-26, 2001-Ohio-7001. Once asserted in the motion to suppress that the arresting officer failed to comply strictly with the standards, it is the state's burden to establish that the officer did strictly comply with the standards. State v. Shepard, 2d Dist. No. 2001-CA-34, 2002-Ohio-1817.
 {¶ 25} Wilson finds fault with the manner of execution of all three tests. However, Trooper Zatvarnicky testified that he strictly complied with the training he underwent with the Ohio State Highway Patrol in Columbus for administering these tests. (Tr. 7). Wilson tried to show failure to strictly comply with the mandates in the DWI Detection and Standardized Field Sobriety Testing Student Manual (manual) during his cross-examination of Trooper Zatvarnicky. The manual that Trooper Zatvarnicky learned from was not offered into evidence at the suppression hearing, however, our library contains a copy of the 2000 manual.
 {¶ 26} Concerning the HGN testing, Wilson states that the trooper did not indicate where the test was administered, that there was not a 45-degree angle measured before starting the test, that the trooper did not designate a point on the pen to follow, and that there was not a four second count employed. First, a review of the manual indicates that it does not require the test to be performed in any one location. Second, the manual does not require a trooper to measure out a 45-degree angle when performing this test. (Manual VIII-6). The manual gives directions indicating how to "estimate" a 45-degree angle by using a template. It further states that after performing this test numerous times an officer will have the ability to "estimate" a 45-degree angle without using a template. (Manual VIII-6). Third, Trooper Zatvarnicky testified that he tapped the top of the pen, indicating that this was the point to follow. (Tr. 21). Lastly, in performing the HGN test, the first prong of the test to determine whether the eye can follow a moving object smoothly does not require a concrete four second count. Instead, the manual states that this test will be approximately four seconds in duration. (Manual VIII-7). When Trooper Zatvarnicky testified that there was not a time period to do the test, he was discussing the first prong of the test. However, the second prong of the HGN test, distinct nystagmus at maximum deviation, does require a minimum of four seconds. Trooper Zatvarnicky did not testify that he held this test for four counts. However, in his general testimony he stated that he strictly complied with the requirements for all tests. (Tr. 7, 9, 10).
 {¶ 27} Next, there were the walk and turn test and the one-leg stand test, collectively called the "divided attention" test. Wilson makes the same complaints about both of these tests. Both tests require the subject to keep his arms to his sides. In performing both of these tests Wilson raised his arms six or more inches. Raising ones arms this high would cause the subject to accumulate points and possibly fail the test. Trooper Zatvarnicky testified to instructing Wilson to keep his hands at his sides. (Tr. 21-22). Furthermore, in addition to verbal instruction, Trooper Zatvarnicky demonstrated each test. (Tr. 21-22). Wilson claims that with the gun belt on Trooper Zatvarnicky's hands would be six inches from his sides. Therefore, according to Wilson, the demonstration led Wilson to believe that his arms were supposed to be six inches from his sides.
 {¶ 28} Wilson's argument is unpersuasive. First and foremost, if this reasoning were true, no one would ever correctly perform the test, as they would all be mimicking the officer's "raised arms." Additionally, Trooper Zatvarnicky's gun belt may have caused his arms to be a few inches from his sides, but it could not have caused his arms to be six or more inches from his sides. The tests allow for a subject to raise his arms a few inches while performing the tests. (Manual VIII-11, VIII-13 — VIII-14). However, points are accumulated if a subject raises his arms six or more inches when performing the test. (Manual VIII-11, VIII-13 — VIII-14). Furthermore, Trooper Zatvarnicky instructed Wilson to keep his arms at his sides. If there were inconsistencies between the instructions and the demonstration, Wilson had the opportunity to ask questions. (Tr. 7-11).
 {¶ 29} Lastly, Wilson argues that Trooper Zatvarnicky did not recall how long Wilson held his leg in the one-leg stand test, and thus it could not have been for the required 30 seconds. However, Trooper Zatvarnicky's report of the incident reveals that Wilson lowered his foot to the ground four times, stopped counting and could not remember where to pick up when asked to continue. The manual states, "if suspect cannot do test or puts foot down three or more times, record as if all four clues were observed." (Manual VIII-14). At the point that Wilson lowered his foot for the fourth time, he had already failed the test by achieving four out of four points. As such, whether he continued for a full 30 seconds would not have made any difference. This argument fails. The trial court did not error by failing to suppress the results of the field sobriety tests.
 {¶ 30} Even if we assume, arguendo, that the results from the field sobriety tests should have been excluded, the totality of the facts supported Officer Zatvarnicky's decision to arrest Wilson. Probable cause to arrest does not necessarily have to be based on a suspect's poor performance on sobriety tests. Rocky River v. Horvath (Apr. 11, 2002), 8th Dist. No. 79997. As explained earlier in the opinion, Trooper Zatvarnicky observed Wilson weaving in and out of his lane of traffic within a short distance, he smelled alcohol on Wilson, he observed Wilson's impaired coordination, and he observed Wilson's red, bloodshot, glassy eyes. Based on these facts, probable cause existed for the arrest. Homan, supra at 427 (holding that the officer had probable cause to arrest defendant for driving under the influence where the officer observed erratic driving, that defendant's eyes were red and glassy, her breath smelled of alcohol, and she admitted to consuming three beers); Horvath, 8th Dist. No. 79997 (holding that observation of appellant veering outside of his lane, his glassy, bloodshot eyes, and the odor of alcohol emitted from his person was sufficient information to cause a prudent person to believe that appellant was driving under the influence of alcohol); Statev. McCoy, 5th Dist. No. 2001CA00125, 2002-Ohio-1855; State v. Ferguson, 3d Dist. No. 4-01-34, 2002-Ohio-1763 (holding that an officer had probable cause to arrest appellant where officer observed appellant speeding, a smell of alcohol emitting from his person, and observation of appellant's red eyes and slurred speech); State v. Dwyer, 11th Dist. No. 2001-L-075, 2002-Ohio-710. This assignment of error is without merit.
 {¶ 31} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
Waite, P.J., and DeGenaro, J., concur.